STANLY J. STEWART, Plaintiff-Appellant, v. CHICAGO TITLE INSURANCE COMPANY *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0231

Opinion filed January 13, 1987.

Jerold W. Barringer, of Farm Law Institute, of Carlinville, for appellant.

Barber, Segatto, Hoffee, Hines & Edwards, of Springfield (Barry O. Hines and R. Kurt Wilke, of counsel), for appellees.

JUSTICE GREEN delivered the opinion of the court:

On August 2, 1985, plaintiff, Stanly J. Stewart, filed suit in the circuit court of Macoupin County against defendants, Chicago Title Insurance Company (Chicago Title) and David A. Weaver, alleging that he had been libeled by the defendants. He sought compensatory and punitive damages. On March 20, 1986, the circuit court allowed a motion by the defendants attacking the sufficiency of plaintiff's amended complaint and dismissed the suit in bar of action. Plaintiff has appealed. We affirm.

In summary, the amended complaint alleged that (1) plaintiff is a farmer residing in and owning farmland in Macoupin County, (2) Weaver, while acting in the scope of his employment for Chicago Ti-

tle, prepared a letter of commitment to furnish title insurance covering plaintiff's farmland to the State Bank of Farmersville (State Bank) which sought to foreclose a mortgage on that land, (3) the letter dated August 2, 1984, was sent by defendants to State Bank's attorney, John Squires, (4) the letter requested that parties receiving the letter should contact defendant to be more thoroughly informed of the contents of the letter, (5) as a result of the letter, Squires contacted Weaver, discussed the contents with the defendant, and, upon Weaver's advice, sent the letter to several people, (6) the letter contained false statements concerning plaintiff which Weaver either knew to be false or about which Weaver had been reckless in determining their truth, and (7) as a result, plaintiff was defamed and injured in his business and profession.

A copy of Weaver's purported letter to Squires was attached to the amended complaint. It stated that its purpose was to explain "Exception No. 21 of Schedule B" of Chicago Title's commitment for a title policy concerning plaintiff's real estate in question. The letter stated in part:

> "Because of the Declaration of Homestead Rights and Declaration of Land Patent, noted at exception No. 20 of Schedule B, I first of all want to let you, and your client, know that you may be involved with an unusual and potentially troublesome situation. My guess is that Mr. Stewart is a member of a militant farm group (similar to the 'Possee Commitatus' [sic]) whose usual practice is to attempt to disrupt the legal system and to complicate foreclosure proceedings as much as possible. Their theory seems to be that the declarations create a new chain of title as to their interest and that, when the mortgage is foreclosed and the deed issued therefrom, that deed is of no effect since it relates back only to the mortgage which was recorded prior to their Declarations. In effect, then, they claim that their Declarations, when recorded, create a new chain of title and a 'perfect and true allodial title' in themselves, free and clear of all prior interests, liens and encumbrances."

The letter also discussed a similar situation in Montgomery County and stated that there, the landowner upon whose property foreclosure proceedings had been brought had filed suit in the Federal court seeking large damages against numerous people involved in the foreclosure proceedings. The letter concluded that defendant "may not contest this vigorously, but the recorded Declarations lead me to believe that you may have a real struggle on your hands."

The motion of the defendant upon which the case was dismissed

contended that the complaint showed on its face that (1) the letter was subject to a qualified privilege because it was intended for a small group of people (a) who had a special interest in being informed of the contents of the letter, and (b) to whom the writer owed a duty to make the disclosure (see *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 150 N.E.2d 202); (2) the reference to plaintiff in the letter concerned only matters of the writer's opinion; and (3) the letter was subject to an innocent construction. The trial court concluded that the references in the letter to plaintiff stated mere opinions of the writer as to plaintiff's propensities. We agree.

Recently, in *Owen v. Carr* (1986), 113 Ill. 2d 273, 497 N.E.2d 1145, the supreme court held that a statement allegedly made by a lawyer concerning another lawyer and later published in a professional journal was not defamatory for the primary reason that, under the innocent-construction rule as modified by *Chaski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195, the statement could reasonably be construed as a mere statement of the allegations in a case brought by a client of the lawyer making the statement. The *Owen* court then said:

> "We observe, too, that the Supreme Court has recognized a constitutional privilege for expressions of *opinion*. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997.) Whether a statement is to be judged to be one of fact or one of opinion is a matter of law (*Lewis v. Time Inc.* (9th Cir. 1983), 710 F.2d 549), and the *involved language must be considered in context to determine whether the statement should be construed to be an expression of opinion* (*Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin* (1974), 418 U.S. 264, 41 L. Ed. 2d 745, 94 S. Ct. 2770; *Ollman v. Evans* (D.C. Cir. 1984), 750 F.2d 970). As stated, the statements may reasonably be viewed as an expression of Carr's opinion regarding his client's allegations against Owen. Carr's acknowledgment that he did not know the specific information Owen gave the Judicial Inquiry Board shows that his statement was not a factual charge and actionable as a matter of law." (Emphasis added.) *Owen v. Carr* (1986), 113 Ill. 2d 273, 280-81, 497 N.E.2d 1145, 1148.

After the decision of the United States Supreme Court in *Gertz*, section 566 of the Restatement (Second) of Torts was changed to state:

> "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is action-

able only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Restatement (Second) of Torts sec. 566 (1977).

Two illustrations in the comments to section 566 demonstrate its application:

"3. A writes to B about his neighbor C: 'I think he must be an alcoholic.' A jury might find that this was not just an expression of opinion but that it implied that A knew undisclosed facts that would justify this opinion.

4. A writes to B about his neighbor C: 'He moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair with a portable radio listening to a news broadcast, and with a drink in his hand. I think he must be an alcoholic.' The statement indicates the facts on which the expression of opinion was based and does not imply others. These facts are not defamatory and A is not liable for defamation." Restatement (Second) of Torts sec. 566, comment c, illustrations 3, 4 (1977).

Here, the alleged letter attributed to defendant speaks in such terms as: (1) "you *may* be involved"; (2) "[m]y *guess* is"; (3) "[t]heir theory *seems* to be"; and (4) "the recorded Declarations lead me to *believe*" (emphasis added), all of which imply that the writer is setting forth an opinion rather than alleging matters of fact. However, under the theory of section 566, these indications that the writer is merely expressing an opinion are insufficient, of themselves, to clothe the letter with first amendment opinion privilege enunciated in *Gertz.*

Accordingly, the major question for decision here is whether the letter attributed to defendant shows a sufficient basis for the writer's opinion. Notably, in *Owen,* the court indicated that in determining whether a statement is opinion, it looks to whether "the statements may reasonably be viewed" as such. (*Owen v. Carr* (1986), 113 Ill. 2d 273, 280-81, 497 N.E.2d 1145, 1148.) The significant portion of the instant letter begins with an explanation that the bases of the writer's concern are certain declarations appearing in the chain of title to plaintiff's land. A fair and reasonable inference is that plaintiff has made and filed one of these declarations by which he purports to create "a 'perfect and true allodial title' " in himself and that he and others making this declaration claim that such a title is free of all previous liens such as those held by State Bank. An "allodial" title is defined as one that is "free." (See Black's Law Dictionary 70 (5th ed. 1979).) The writer of the letter further indicates that he is concerned

because people who have been filing these declarations have been aggressively attempting to disrupt and complicate foreclosure proceedings.

The most troublesome aspect of the letter is the statement the "militant group" of which the writer states it to be his "guess" that plaintiff belongs is "similar to the 'posse comitatus.' " The phrase "posse comitatus" has been traditionally understood to mean the substantial portion of the population of the county which the sheriff may call upon for aid in the performance of his or her duties. (See Black's Law Dictionary 1046 (5th ed. 1979).) However, plaintiff maintains that the phrase has a contemporary reference to a group of extreme radical militants who break the law and kill people. Plaintiff further contends that the people to whom the letter was shown would give the contemporary definition to the phrase. No facts are shown to support an opinion that plaintiff would engage in tactics of that nature.

As indicated in *Owen*, the allegedly defamatory language must be taken in context. Here, the letter describes the group making declarations of "allodial" titles as merely being similar to "the posse comitatus" in that "their usual practice is to attempt to disrupt the legal system and complicate foreclosure proceedings." While the "posse comitatus" referred to in the letter was obviously not the body of the county available to the sheriff's call, a reasonable interpretation of the language is that, in the opinion of the writer, the militant group of which plaintiff appeared to be a part is similar to the contemporary "posse comitatus" in that they attempt to disrupt and prevent foreclosures on farm mortgages by a self-proclamation of a superior title. The letter does not reasonably imply that the writer is of the opinion that plaintiff engages in all of the activities of groups presently called the "posse comitatus."

Plaintiff cites *Ollman v. Evans* (D.C. Cir. 1984), 750 F.2d 970, where the court listed four tests to assist courts in determining whether a statement is a defamatory statement or protected opinion. The first test is whether the common usage or meaning of the specific terms or language has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite or ambiguous. The second test requires the court to look at the defamatory statement from the viewpoint of a reasonable reader to determine if that reader believes the statement to have a specific factual content making it believable. The third test requires that the court consider the full context of the statement to see if the surrounding language will influence the average reader's readiness to infer that a particular statement has factual content. The fourth test re-

quires the court to consider the broader context or setting in which the statement appears, specifically the type of writing in which the statement is found and the people to whom the writing is distributed.

Plaintiff argues that the first *Ollman* test is not met here, because the trial judge indicated that he was unaware of the present-day meaning of the phrase "posse comitatus." Plaintiff may be correct in his assertion that the contemporary meaning for that phrase is not well known and may be uncertain. However, as we have indicated, we determine that the letter may be reasonably interpreted as stating that plaintiff is not of a group that engages in all activities of those calling themselves the "posse comitatus." The statement of the "guess" that plaintiff belonged to a militant group was couched in language of opinion rather than firsthand knowledge, but plaintiff's membership in the stated group would be a specific believable fact. The tenor of the letter as a whole, considering the group to whom the letter was apparently directed, together with the fact that the letter concerned information in regard to financing of plaintiff's farming operation, was that plaintiff was part of a group that would likely make a mortgage foreclosure difficult. The focus was not on the likelihood that plaintiff would resort to violent action. The application of the *Ollman* test to this letter does not negate a determination that the allegedly defamatory matter in the letter was protected opinion as a matter of law.

■■ The trial court allowed a defense motion to dismiss the original complaint ruling the complaint showed on its face that the letter was subject to a qualified privilege. Plaintiff then filed an amended complaint negating the qualified-privilege theory by an allegation that the defendants acted with malice. The amended complaint did not change the allegations that bore upon the question of whether the allegedly defamatory statements were opinions. Plaintiff contends that the trial court was estopped, for some reason, in finding the amended complaint to be insufficient on the opinion theory when the court did not cite the opinion theory as a reason for its ruling on the original complaint. We know of no such rule.

■■ ■ As we have indicated, we hold that (1) the statements in the letter concerning plaintiff and the group to which the writer guessed that plaintiff belonged are phrased in language indicating an opinion, (2) the letter is reasonably construed to indicate that plaintiff's group "is similar to the posse comitatus" not in all ways but in such ways as would make the foreclosure of a mortgage on the property of a member difficult, (3) a substantial factual basis is shown for the writer's opinion because of the indication that plaintiff has filed a

declaration refuting the validity of State Bank's mortgage which is similar to that filed by members of a militant group who are making difficult the foreclosure of mortgages, and (4) the letter is thus constitutionally protected opinion within the doctrine of *Gertz*. We need not decide whether the modified innocent-construction rule is applicable. The allegation of malice negates the qualified-privilege rule as a basis for supporting the order of dismissal.

For the reasons stated, the judgment dismissing the complaint in bar of action is affirmed.

Affirmed.

SPITZ, P.J., and McCULLOUGH, J., concur.