JACK HABERSTROH, Plaintiff-Appellant, v. CRAIN PUBLICATIONS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—87—2384

Opinion filed September 25, 1989.

Walsh, Neville, Pappas & Mahoney, of Chicago (George Pappas, of counsel), for appellant.

Jenner & Block, of Chicago (David P. Sanders and Kevin P. Whaley, of counsel), for appellees Crain Publications, Inc., and Advertising Age.

Querry & Harrow, Ltd., of Chicago (Michael Resis and Victor J. Piekarski, of counsel), for appellee Alan Pake.

Tuohy & Martin, Ltd., of Chicago (James L. Tuohy, of counsel), for appellee Thomas J. Ryan.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from the circuit court's dismissal with prejudice of a libel action brought by Dr. Jack Haberstroh (plaintiff), an associate professor in the Department of Mass Communications at Virginia Commonwealth University in Richmond, Virginia, against Crain Communications, Inc., publisher of *Advertising Age,* Alan Pake, and Thomas J. Ryan (defendants). Plaintiff's three-count complaint alleged that portions of three letters published in *Advertising Age* were libelous. In dismissing plaintiff's complaint, the circuit court held that plaintiff's complaint did not adequately plead libel *per se,* as required where no special damages are alleged. We affirm.

The three letters, the subject of this appeal, were separately authored by Pake, Ryan and Anita Ludwig (not named as a defendant) and published by Crain in the November 11, 1985, and February 10, 1986, issues of *Advertising Age* in the section titled "Viewpoint: Letters." Each letter was written to the editor of *Advertising Age* in response to an article written by plaintiff and published in the "Personal Privilege" section of the October 7, 1985, issue of *Advertising Age.* The article, entitled "Tone it down a bit, Lou," is described in plaintiff's complaint as questioning "some of the methods used by advertising agencies in promoting products and express[ing] reasons why individuals involved in advertising are not held in high esteem by the general public." The article strongly criticizes persons in the advertising industry. Among the statements made by plaintiff in the article are "you advertising cats are deliberately embedding vaginas, penises and orgies of every description in advertising art in order to sell products" and that "your code of ethics is a laugh, followed by no one."

In count I of his complaint, plaintiff alleges that Crain and Pake defamed him by accusing him "of being a communist and being incompetent in the performance of his duties as a professor." The complaint refers to Pake's letter:

"No question—Haberstroh is a commie implant at old VCU. His mission is to overthrow the free enterprise system by poisoning its roots.

Why would anyone study a subject from a guy who obviously doesn't understand it?"

In count II of his complaint, plaintiff alleges that Crain and Ryan defamed him by accusing him "of committing a crime in that he uses illicit drugs." The complaint refers to a headline, which states "AN ACID TRIP," and the accompanying letter written by Ryan:

" 'Tone it down a bit, Lou' written by Jack Haberstroh (Per-

sonal Privilege, AA Oct. 7) is certainly an indictment of all people working in the advertising profession. I am sure that many individuals reading this column had an ill feeling knowing that Mr. Haberstroh is an associate professor of advertising at Virginia Commonwealth University and his view of our profession is all that his young students will take away.

Maybe Mr. Haberstroh should teach chemistry. I am sure he would recognize ACID when he sees it."

Finally, in count III of his complaint, plaintiff alleges that Crain defamed him by accusing him of being "mentally deranged and incompetent to perform his duties as a professor." The complaint refers to a letter written by Ludwig:

"To Mr. Haberstroh's students, I would say: Run for your creative lives! This guy isn't travelling with a full set of luggage.

To all you creative ad pro's at or near retirement, I say: Get to a university and teach the next ad generation the real world of advertising."

In libel actions, proof of injury is not necessary where the alleged statement is libelous *per se*—where the words are "obviously and naturally harmful." (*Fried v. Jacobson* (1983), 99 Ill. 2d 24, 27, 457 N.E.2d 392, 394; *Renard v. Columbia Broadcasting System, Inc.* (1984), 126 Ill. App. 3d 563, 566, 467 N.E.2d 1090, 1093.) Illinois courts have found four categories of words includible as "libelous *per se*": (1) words which impute the commission of a criminal offense; (2) words which impute that one has a communicable disease which tends to exclude a person from society; (3) words which impute inability to perform or want of integrity in the discharge of duties of office or employment; and (4) words which prejudice a particular party in his profession or trade. *Harris Trust & Savings Bank v. Phillips* (1987), 154 Ill. App. 3d 574, 580, 506 N.E.2d 1370, 1374; *Owen v. Carr* (1986), 113 Ill. 2d 273, 277, 497 N.E.2d 1145, 1147; *Bontkowski v. Chicago Sun-Times* (1969), 115 Ill. App. 2d 229, 232, 252 N.E.2d 689, 691.

Several well-established rules are applicable to the determination of whether statements are libelous *per se* within any of the above-mentioned categories. Illinois courts have followed the "innocent construction rule," established in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, and modified in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195. Under the original rule announced in *John*, words capable of being read innocently had to be so read. *Chapski* narrowed the rule in an attempt to strike a balance be-

tween the individual's interest in vindicating his good name and the importance of allowing the "breathing space" essential to first amendment guarantees. The rule, as modified, requires the element of reasonableness:

> "[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if as so construed, the statement may reasonably be innocently interpreted *** it cannot be actionable *per se*." (*Chapski*, 92 Ill. 2d at 352, 442 N.E.2d at 199.)

In construing words under the innocent construction rule, courts have developed other principles. Numerous Illinois cases have found words that are mere name-calling not to be actionable. (*Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 292 N.E.2d 138; *Skolnick v. Nudelman* (1968), 95 Ill. App. 2d 293, 237 N.E.2d 804.) Words found to be rhetorical hyperbole or employed only in a loose, figurative sense have also been deemed to be nonactionable. *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 419 N.E.2d 350; *Greenbelt Cooperative Publishing Association v. Bresler* (1970), 398 U.S. 6, 26 L. Ed. 2d 6, 90 S. Ct. 1537; *Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin* (1974), 418 U.S. 264, 41 L. Ed. 2d 745, 94 S. Ct. 2770.

■ Applying these established rules to the case at bar, we consider plaintiff's contention that the statements in the three letters constitute libel *per se*. Plaintiff argues that under their plain and ordinary meaning, the three letters refer to plaintiff's occupation, question his capability as a teacher, and tend to prejudice plaintiff in his profession, while Ryan's letter further accuses him of committing a crime. Viewing the statements in their appropriate context, we find that the circuit court did not err in concluding the statements were not libelous *per se*, as the statements may reasonably be innocently construed as hyperbolic rhetoric of the viewpoints espoused in plaintiff's article.

The label "commie" as used in the context of Pake's letter, unlike the cases cited by plaintiff, *Resudek v. Sberna* (1985), 132 Ill. App. 3d 783, 477 N.E.2d 789, *Savage v. Seed* (1980), 81 Ill. App. 3d 744, 401 N.E.2d 984, and *McGuire v. Jankiewicz* (1972), 8 Ill. App. 3d 319, 290 N.E.2d 675, does not imply a specific wrongdoing or directly attack plaintiff's integrity or competence in his profession. The statement clearly was made in response to a public debate initiated by plaintiff and in response to plaintiff's views of the advertising industry. A reasonable interpretation of this statement is that it figuratively expresses a belief that plaintiff's views are outside the mainstream. The second part of the Pake letter, "[w]hy would anyone

study a subject from a guy who obviously doesn't understand it?" likewise could reasonably be innocently construed as an assessment of the merits of plaintiff's views.

■■ Ludwig's statement, "[r]un for your creative lives—This guy isn't travelling with a full set of luggage," also is not libelous *per se*. Because language may be abusive does not make it libelous *per se*. Courts have found similar language to be nonactionable as mere "name-calling." (*Skolnick v. Nudelman* (1968), 95 Ill. App. 2d 293, 237 N.E.2d 804 (statements that the plaintiff was a "nut," a "mishuginer," and a "screwball"); *Delis*, 9 Ill. App. 3d 217, 292 N.E.2d 138 (statements consisting of "dishonorable," "deluded," and "liar"); *Thomas v. News World Communications* (D.D.L. 1988), 681 F. Supp. 55, 63 (statements including "bum," "pitiable," "lunatic," "deluded," and "insane").) The phrase used in the case at bar, "not travelling with a full set of luggage," clearly is an appraisal of plaintiff's views placed in his article and not a direct assault on plaintiff as a teacher. Although the phrase is admittedly abusive, it is mere name-calling and not so obviously and naturally harmful as to constitute libel *per se*.

Turning to the letter written by Ryan and its accompanying headline, plaintiff argues that the headline "AN ACID TRIP" and the language "I am sure [plaintiff] would recognize ACID when he sees it" imputes that plaintiff uses illicit drugs.

■■ ■ While we acknowledge that words in a headline are to be read in conjunction with the language that follows (*Kulesza v. Chicago Daily News, Inc.* (1941), 311 Ill. App. 117, 35 N.E.2d 517) and that the language need not express the commission of the offense in terms of art or with the particularity of an indictment to be libelous *per se* (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 243 N.E.2d 217, *rev'd on other grounds* (1982), 92 Ill. 2d 344), we do not believe the two impute that plaintiff uses illicit drugs. Considering their context, a reasonable construction, as with the previously discussed letters, is that they refer to a reader's response to an article written by plaintiff and are not a personal account of plaintiff's activities. As defendants Ryan and Crane point out, the term "acid" may be reasonably construed as a satirical play on the definitions of the word. "Acid" is defined as "something incisive, biting or sarcastic" and also as a chemical compound. In suggesting that plaintiff should teach chemistry because he is familiar with "acid," the author plays on the biting, incisive ideas in plaintiff's article.

The cases plaintiff cites in support of his contention are distinguishable from the instant case in that the language in those cases did not have an alternative, reasonable construction. In *Catalano* (83 Ill.

2d at 151, 419 N.E.2d at 353), the defendant, speaking about certain aldermen, stated, "[t]wo hundred forty pieces of silver changed hands, thirty for each alderman." The only reasonable interpretation of the language there was that it implied that the aldermen accepted bribes. The defendant in *Zeinfeld* (41 Ill. 2d at 347, 243 N.E.2d at 219-20), in response to an inquiry regarding the plaintiff's employment status as a comptroller, stated that after the plaintiff had left the company, "we discovered there was a substantial amount of money owed the company. Upon tracing [plaintiff] he offered to compromise." Clearly, the only reasonable construction of these statements is that the plaintiff had performed a criminal act in acquiring his employer's money.

Accordingly, because Ryan's letter and accompanying headline may be reasonably innocently construed, we hold that they are not libelous *per se* under either the first or fourth *per se* categories.

■ Apart from our finding that the statements in issue are not libelous *per se*, we hold that the statements here are nonactionable because they are constitutionally protected expressions of opinion. It is an established first amendment principle that expressions of opinion are protected forms of speech no matter how vigorously the opinion is expressed. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997; *Owen v. Carr* (1986), 113 Ill. 2d 273, 497 N.E.2d 1145; *Howell v. Blecharczyck* (1983), 119 Ill. App. 3d 987, 457 N.E.2d 494.) The crucial inquiry where first amendment rights are asserted in this context is whether the statement is an opinion or fact. Illinois courts have followed the totality-of-the-circumstances analysis, developed in *Ollman v. Evans* (D.C. Cir. 1984), 750 F.2d 970, *cert. denied* (1985), 471 U.S. 1127, 86 L. Ed. 2d 278, 105 S. Ct. 2662, to serve as a guideline in making this determination. (*Stewart v. Chicago Title Insurance Co.* (1987), 151 Ill. App. 3d 888, 503 N.E.2d 580; *Horowitz v. Baker* (1988), 168 Ill. App. 3d 603, 523 N.E.2d 179.) This analysis, as interpreted in *Stewart*, consists of the following:

> "The first test is whether the common usage or meaning of the specific terms or language has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite or ambiguous. The second test requires the court to look at the defamatory statement from the viewpoint of a reasonable reader to determine if that reader believes the statement to have a specific factual content making it believable. The third test requires that the court consider the full context of the statement to see if the surrounding language will influence the average reader's readiness to infer that a particular statement has factual content. The fourth test

requires the court to consider the broader context or setting in which the statement appears, specifically the type of writing in which the statement is found and the people to whom the writing is distributed." *Stewart*, 151 Ill. App. 3d at 893-94, 503 N.E.2d at 583.

 The three letters in the case at bar were clearly written in response to a debate initiated by plaintiff in writing a controversial article. The letters were published in the "letters to the Editor" section of the publication, traditionally the forum for expressions of opinion. None of the language in the letters could be reasonably read to imply the writer's personal knowledge of any specific misconduct or of plaintiff's abilities as a teacher. Viewed in their entirety and context, a reasonable reader would not believe that any of the statements have specific factual content, but would believe the statements were expressions of opinion as to the views expressed in plaintiff's article.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.