578 N.E.2d 299 (1991)
217 Ill. App.3d 803
161 Ill.Dec. 172
Anthony N. KOLENGAS, et al., Plaintiffs-Appellants,
v.
HEFTEL BROADCASTING CORPORATION, et al., Defendants-Appellees.
No. 2-90-0992.
Appellate Court of Illinois, Second District.
August 29, 1991.
Rehearing Denied October 1, 1991.
*300 Aldo E. Botti, Howard R. Wertz, Botti, Marinaccio, DeSalvo & Tameling, Ltd., Oak Brook, and John R. Wimmer, argued, Downers Grove, for Anthony N. Kolengas, father and Donna Marie Kolengas.
Francis D. Morrissey, Thomas F. Tobin, John M. McGarry, argued, Michael A. Pollard, Baker & McKenzie, and Jane E. Jarsho, D'Ancona & Pflaum, Chicago, for Heftel Broadcasting Corp.
Jean Maclean Snyder and Steven L. Baron, D'Ancona & Pflaum, Chicago, for Evergreen Media Chicago FM, Evergreen Media Corp., Chi AM, and Tim and Beth Disa.
*301 Justice DUNN delivered the opinion of the court:
Plaintiffs, Anthony, Donna, and Christopher Kolengas, appeal the dismissal of their first amended complaint by the trial court. Plaintiffs brought this action against defendants, Tim and Beth Disa, two WLUP-AM radio personalities et al. for defamation, publication of an injurious falsehood, invasion of privacy, and reckless infliction of emotional distress. Defendants moved to dismiss the complaint for failure to state a cause of action pursuant to section 2-615 of the Code of Civil Procedure. (Ill.Rev.Stat.1989, ch. 110, par. 2-615.) After a hearing on the matter, the trial court dismissed the complaint. We affirm in part and reverse in part.
This action was brought as a result of a radio broadcast on April 26, 1988. According to the amended complaint, Anthony Kolengas was engaged in the business of promoting and producing classic cartoon festivals. In April 1988, Kolengas was preparing for a cartoon festival to be held on April 30 and May 1, 1988. The complaint alleged the cartoon festival was to be a benefit for public awareness of neurofibromatosis, which was once known as the elephant man's disease. Kolengas intended to donate a portion of the proceeds from the festival to the National Neurofibromatosis (NF) Foundation, Inc. The complaint also alleged that Kolengas' wife, Donna, and his son, Christopher, were afflicted with the disease.
Kolengas hired Evergreen Media Corporation of Chicago AM to advertise the festival on WLUP-AM from April 25, 1988, through May 1, 1988. On April 26, shortly after the advertisement aired during the broadcast of a radio program featuring Tim and Beth Disa, Kolengas telephoned WLUP-AM. A conversation ensued between Kolengas and Tim and Beth Disa on the air. Kolengas was allowed to introduce himself by name. He stated that he was the producer of the cartoon festival described in the advertisement. He also described the dates and times of the festival, as well as its location.
During the conversation, Kolengas stated that a portion of the proceeds from the festival would benefit the NF Foundation. In response to questions posed by Tim and Beth Disa, Kolengas explained that NF was neurofibromatosis, or elephant man's disease. Beth Disa asked Kolengas how he was involved, and Kolengas replied that his wife and son had elephant man's disease. Tim Disa then stated on the air, "You're gone," and disconnected Kolengas.
The amended complaint alleges that shortly after the conversation, Tim Disa stated on the air that Kolengas was not for real and that Beth Disa stated that Kolengas was "scamming" them. The amended complaint also alleges that both Tim and Beth Disa stated that "there was no such show as the classic cartoon festival" described by Kolengas.
In addition, the complaint alleges Tim Disa stated, "Why would someone marry a woman if she had Elephant Man disease? It's not like he couldn't tellunless it was a shotgun wedding." Allegedly, Beth Disa replied that it must have been a shotgun wedding. Shortly after the comments concerning the shotgun wedding, the complaint alleges that Tim Disa stated, "If he is producing it, he's only producing it part-time. The rest of the time he's too busy picking out their wardrobe. You know, he has to make sure they have large hats to cover their big heads and make sure that all of their collars are big enough to fit." Beth Disa allegedly indicated her agreement with that statement. Kolengas' five-year-old son, Christopher, was listening to the broadcast. Kolengas alleges these statements were made wantonly and maliciously, and with knowledge of, or with reckless disregard as to their truth or falsity.
Count I was brought in the name of Anthony Kolengas alone. It alleges the statements made by the Disas concerning Kolengas' business were false and defamatory. In particular, Kolengas alleges the statements made by the Disas that he was "not for real," that he was "scamming" the Disas, and that "there was no such show as the classic cartoon festival" prejudiced him *302 in the business of producing and promoting classic cartoon festivals. Kolengas alleges that, as a proximate result of these false and defamatory statements, he was greatly injured in his reputation and business and that the attendance receipts earned from the festival held April 30 and May 1, 1988, were greatly diminished. Defendants claim these statements are insufficient to support a cause of action for defamation because they consist of constitutionally protected opinion, rhetorical hyperbole, and are capable of an innocent construction. We disagree.
Defamatory statements may be actionable per se or actionable per quod. A statement is actionable per se if it is "so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." (Owen v. Carr (1986), 113 Ill.2d 273, 277, 100 Ill.Dec. 783, 497 N.E.2d 1145; Schaffer v. Zekman (1990), 196 Ill.App.3d 727, 731, 143 Ill.Dec. 916, 554 N.E.2d 988.) Statements are actionable per quod if they necessitate extrinsic facts or innuendo to explain their defamatory meaning, and require evidence demonstrating, as a matter of fact, that some substantial injury resulted to the aggrieved person from their use. (Heerey v. Berke (1989), 188 Ill.App.3d 527, 532, 136 Ill.Dec. 262, 544 N.E.2d 1037; Schaffer v. Zekman, 196 Ill.App.3d at 731, 143 Ill.Dec. 916, 554 N.E.2d 988.) Among other things, a statement is actionable per se if it imputes an inability to perform or want of integrity in the discharge of duties of office or employment or if it prejudices a particular party in his or her profession or trade. (Costello v. Capital Cities Communications, Inc. (1988), 125 Ill.2d 402, 414, 126 Ill.Dec. 919, 532 N.E.2d 790; Lowe v. Rockford Newspaper, Inc. (1989), 179 Ill.App.3d 592, 595, 128 Ill.Dec. 367, 534 N.E.2d 549.) The statements at issue in count I appear to fall within this category.
A cause of action will not be dismissed under section 2-615 (Ill.Rev.Stat. 1989, ch. 110, par. 2-615) unless it clearly appears that no set of facts can be proved which entitle plaintiff to recover. (Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc. (1989), 190 Ill.App.3d 524, 527, 137 Ill.Dec. 409, 546 N.E.2d 33; Century Universal Enterprises, Inc. v. Triana Development Corp. (1987), 158 Ill. App.3d 182, 187, 110 Ill.Dec. 229, 510 N.E.2d 1260.) All facts which are well pleaded are to be construed as true, as well as all reasonable inferences favorable to the nonmoving party which can be drawn from those facts. (Downers Grove Volkswagen, 190 Ill.App.3d at 527, 137 Ill.Dec. 409, 546 N.E.2d 33; Century Universal Enterprises, 158 Ill.App.3d at 187, 110 Ill. Dec. 229, 510 N.E.2d 1260.) Although the question of whether a statement is reasonably understood as defamatory is generally a question of fact for the jury, it is nevertheless the role of the court to determine, in the first instance, if the alleged defamatory remark is reasonably susceptible to an innocent construction. Heerey v. Berke (1989), 188 Ill.App.3d 527, 530, 136 Ill.Dec. 262, 544 N.E.2d 1037.
In Chapski v. Copley Press (1982), 92 Ill.2d 344, 65 Ill.Dec. 884, 442 N.E.2d 195, our supreme court explained how the rule of innocent construction is to be applied. The court stated:
"We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable per se. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff." (Chapski, 92 Ill.2d at 352, 65 Ill.Dec. 884, 442 N.E.2d 195.)
In modifying the rule of innocent construction, the court noted that courts applying that rule had been straining to find innocent meanings for words when a defamatory meaning was far more reasonable. (Chapski, 92 Ill.2d at 350, 65 Ill.Dec. 884, *303 442 N.E.2d 195; see also Costello, 125 Ill.2d at 416, 126 Ill.Dec. 919, 532 N.E.2d 790.) Thus, this court must determine whether the alleged statements, when given their natural and obvious meaning, may reasonably be innocently interpreted.
In the present case, plaintiff alleges that defendants stated on the air that plaintiff was "not for real," that plaintiff was "scamming" them and that "there was no such show as the classic cartoon festival." The trial court was too quick to dismiss count I under section 2-615. Plaintiff has pleaded facts sufficient to state a cause of action. These statements are not reasonably susceptible to an innocent construction and, thus, are to be considered libelous per se because they impute a want of integrity in the discharge of the duties of plaintiff's employment and prejudice plaintiff in his trade or business. We leave it to the jury to decide in light of the evidence adduced at trial if, in fact, these statements were understood as defamatory or as referring to someone other than the plaintiff.
Defendants also assert the alleged statements contained in count I constitute privileged opinion and/or rhetorical hyperbole. Illinois courts have recognized the distinction between actionable statements of fact and privileged statements of opinion. (See Owen v. Carr (1986), 113 Ill.2d 273, 100 Ill.Dec. 783, 497 N.E.2d 1145; Horowitz v. Baker (1988), 168 Ill.App.3d 603, 119 Ill. Dec. 711, 523 N.E.2d 179; Stewart v. Chicago Title Insurance Co. (1987), 151 Ill. App.3d 888, 104 Ill.Dec. 865, 503 N.E.2d 580.) However, the United States Supreme Court recently abolished what it considered to be the "creation of an artificial dichotomy between `opinion' and fact." Milkovich v. Lorain Journal Co. (1990), 497 U.S. ___, ___, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1, 18.
Although the court did away with what it considered to be a wholesale defamation exemption for statements of opinion, it did not eliminate constitutional protection for all types of opinion. The court stated that protection is still to be afforded to statements that cannot reasonably be interpreted as stating actual facts about an individual. (Milkovich, 497 U.S. at ___, 110 S.Ct. at 2706, 111 L.Ed.2d at 19.) The court also emphasized the duty of an appellate court to make an independent examination of the whole record to ensure the judgment does not constitute a forbidden intrusion on the field of free expression. Milkovich, 497 U.S. at ___, 110 S.Ct. at 2705, 111 L.Ed.2d at 17.
The question of whether a particular statement is one of privileged opinion or actionable defamation is a question of law. (Owen v. Carr, 113 Ill.2d at 280, 100 Ill. Dec. 783, 497 N.E.2d 1145.) In order to determine as a matter of law whether the statements constitute privileged opinion, the entire context of the statements must be examined. However, this case is not on appeal following trial proceedings. Rather, this case comes up on appeal after the dismissal of plaintiff's complaint for a failure to state a cause of action under section 2-615. Because we do not have the whole record before us, we must determine only whether plaintiff has pleaded facts sufficient to state a cause of action. Downers Grove Volkswagen, 190 Ill.App.3d at 527, 137 Ill.Dec. 409, 546 N.E.2d 33.
All well-pleaded facts are to be construed as true. (Downers Grove Volkswagen, 190 Ill.App.3d at 527, 137 Ill.Dec. 409, 546 N.E.2d 33.) The facts as alleged in the complaint, when construed as true, are sufficient to support a cause of action for defamation. It is not at all clear from the face of the complaint that, as a matter of law, these statements were privileged opinion or rhetorical hyperbole. Again, we leave it to the jury to decide if, in fact, these statements were defamatory in light of the evidence adduced at trial.
Next, we consider whether the trial court correctly dismissed count II of plaintiffs' first amended complaint. Count II alleges the publication of an injurious falsehood. Like count I, this count was brought in the name of Anthony Kolengas alone based on statements made by the Disas that he was "not for real," that he was "scamming" them and that "there was no such show as the cartoon festival." Plaintiff alleges these statements were made *304 with reckless disregard to their falsity. This tort has not been recognized in Illinois. Plaintiff asks this court to recognize it for the first time.
The common-law tort known as publication of an injurious falsehood has not been recognized in Illinois. (Suhadolnik v. City of Springfield (1989), 184 Ill.App.3d 155, 185, 133 Ill.Dec. 29, 540 N.E.2d 895.) Nor has its subspecies, the tort of commercial disparagement. (American Pet Motels, Inc. v. Chicago Veterinary Medical Association (1982), 106 Ill.App.3d 626, 633 n. 2, 62 Ill.Dec. 325, 435 N.E.2d 1297.) However, this court need not address the issue of whether to recognize this tort for the first time in the present case because the facts as alleged do not support a cause of action for injurious falsehood.
The Restatement (Second) of Torts defines liability for the publication of an injurious falsehood as follows:
"One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if
(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
(b) he knows the statement is false or acts in reckless disregard of its truth or falsity. Restatement (Second) of Torts § 623A, at 334 (1977).
The comments to section 623A note the similarity between this tort and the tort of defamation. Although both involve the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff, the two torts protect different interests. (Restatement (Second) of Torts § 623A, comment g at 340 (1977).) Defamation is designed to protect the personal reputation of the injured party, whereas injurious falsehood is designed to protect economic interests. Although the two torts may overlap in certain situations, generally the tort of injurious falsehood has more stringent requirements. Restatement (Second) of Torts § 623A, comment g at 341 (1977).
Most importantly, this tort was designed to apply to situations in which statements were made disparaging the quality of what the plaintiff has to sell or the character of his business. On the other hand, if a statement implies the plaintiff is dishonest or perpetrating a fraud on the public, personal defamation may be found. (Restatement (Second) of Torts § 623A, comment g at 341 (1977).) The Disas' statements pertain to plaintiff's honesty, not to the quality of the classic cartoon festivals. Therefore, the facts do not support a cause of action for publication of an injurious falsehood.
Count III of plaintiffs' first amended complaint alleges a cause of action for invasion of privacy, in particular, publicly placing another in a false light. This count was brought in the names of Anthony, Donna and Christopher Kolengas. Plaintiffs allege the statements made by the Disas were made in reckless disregard to their falsity and the false light in which the plaintiffs were placed. The alleged statements are as follows. Tim Disa stated, "Why would someone marry a woman if she had Elephant Man disease? It's not like he couldn't tellunless it was a shotgun wedding." He then stated, "If he is producing it, he's only producing it part-time. The rest of the time he's too busy picking out their wardrobe. You know, he has to make sure they have large hats to cover their big heads and make sure that all of their collars are big enough to fit."
The Restatement (Second) of Torts describes the privacy tort of placing another in a false light as follows:
"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
(b) the actor had knowledge of or acted in reckless disregard to the falsity of the publicized matter and the false light in which the other would be placed." (Restatement (Second) of Torts § 652E, at 394 (1977).)
*305 Because this case comes before the court on a motion to dismiss a complaint for failure to state a cause of action, all well-pleaded facts are admitted as true. (Lovgren v. Citizens First National Bank (1989), 126 Ill.2d 411, 419, 128 Ill.Dec. 542, 534 N.E.2d 987.) Again, a motion to dismiss a complaint for failure to state a cause of action should not be granted unless it clearly appears no set of facts could be proved under the pleadings which would entitle plaintiff to relief. Lovgren, 126 Ill.2d at 419, 128 Ill.Dec. 542, 534 N.E.2d 987.
In Lovgren v. Citizens First National Bank (126 Ill.2d 411, 128 Ill.Dec. 542, 534 N.E.2d 987), our supreme court discussed the elements of this common-law tort. First, it must be determined whether the statements place the plaintiffs in a false light. The first amended complaint clearly alleges the statements place the plaintiffs in a false light. The complaint states that Anthony and Donna Kolengas were not married in a "shotgun" wedding. In addition, as previously stated, the complaint states that Donna and Christopher Kolengas do not have abnormally large heads.
Second, the court must determine whether a finder of fact could decide the false light in which the plaintiffs were placed is highly offensive to a reasonable person. (Lovgren, 126 Ill.2d at 419-20, 128 Ill.Dec. 542, 534 N.E.2d 987.) The test articulated by the Restatement states that this element is met "when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." Restatement (Second) of Torts § 652E, comment c, at 396 (1977).
The statements alleged in the first amended complaint are insufficient to support the "highly offensive to a reasonable person" prong of the tort. The false light in which the plaintiffs were placed is not highly offensive to a reasonable person. Accordingly, the trial court properly dismissed this count.
The last issue before this court is whether the trial court properly dismissed count IV of plaintiffs' first amended complaint. Count IV was brought in the names of all three of the plaintiffs and alleges a cause of action for reckless infliction of emotional distress. This count involves the same statements underlying count III of plaintiffs' complaint.
The elements of this common-law tort were set out by our supreme court in McGrath v. Fahey (1988), 126 Ill.2d 78, 86, 127 Ill.Dec. 724, 533 N.E.2d 806. First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress. (McGrath, 126 Ill.2d at 86, 127 Ill.Dec. 724, 533 N.E.2d 806, citing Public Finance Corp. v. Davis (1976), 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 360 N.E.2d 765.) The court pointed out that the tort does not extend to "`mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" McGrath, 126 Ill.2d at 86, 127 Ill.Dec. 724, 533 N.E.2d 806, citing Restatement (Second) of Torts § 46, comment d at 73 (1977).
Generally, Illinois cases in which infliction of emotional distress has been sufficiently alleged have involved a defendant who stood in a position of authority relative to the plaintiff. (McGrath, 126 Ill.2d at 87, 127 Ill.Dec. 724, 533 N.E.2d 806.) Many of these cases involve corporate defendants harassing clients, customers or employees. (See Public Finance Corp. v. Davis (1976), 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765; Plocar v. Dunkin' Donuts of America, Inc. (1981), 103 Ill.App.3d 740, 59 Ill.Dec. 418, 431 N.E.2d 1175; Milton v. Illinois Bell Telephone Co. (1981), 101 Ill.App.3d 75, 56 Ill.Dec. 497, 427 N.E.2d 829.) The degree of power or authority by the defendant over the plaintiff makes an impact in determining whether the conduct was outrageous or extreme. (McGrath, 126 Ill.2d at 86, 127 Ill.Dec. 724, 533 N.E.2d 806.) Such a position of authority is lacking in the present case.
*306 However, the McGrath court points out that serious consideration is to be given to the defendant's awareness that the plaintiff is particularly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. (McGrath, 126 Ill.2d at 89-90, 127 Ill.Dec. 724, 533 N.E.2d 806.) Behavior which (though rude, abrasive or extremely inconsiderate) may not otherwise be actionable may be deemed outrageous if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress. Public Finance Corp. v. Davis (1976), 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765.
As tasteless as defendants' comments may have been, their conduct was not truly extreme and outrageous. Even considering plaintiffs Donna and Christopher Kolengas are afflicted with neurofibromatosis, the statements made do not constitute extreme and outrageous conduct so as to support plaintiffs' claim for reckless infliction of emotional distress. A court should deny a motion to dismiss unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (McGrath, 126 Ill.2d at 90, 127 Ill.Dec. 724, 533 N.E.2d 806.) No set of facts could be proved under count IV of plaintiffs' first amended complaint which would allow plaintiffs to recover under a theory of reckless infliction of emotional distress. The trial court properly dismissed this count.
Accordingly, we reverse the portion of the trial court's order dismissing count I of plaintiffs' first amended complaint. However, we affirm the portion of the order dismissing counts II through IV. This cause is remanded for further proceedings consistent with this opinion.
Affirmed in part; reversed in part and remanded.
WOODWARD and BOWMAN, JJ., concur.