(No. 62159.—

ROBERT D. OWEN, Appellant, v. REX CARR *et al.*,
Appellees.

*Opinion filed September 17, 1986.*

274

Robert D. Owen, of Decatur, *pro se.*

Heyl, Royster, Voekler & Allen, of Springfield (Adrian E. Harless, Gary M. Peplow, and Michael C. Upperman, Jr., of counsel), for appellee Rex Carr.

Don H. Reuben, James H. Alesia and Donald A. Vogelsang, of Reuben & Proctor, of Chicago, for appellee New York Law Publishing Company *et al.*

JUSTICE WARD delivered the opinion of the court:

Robert D. Owen, an attorney, filed an action for libel in the circuit court of Macon County against Rex Carr, who also is an attorney, New York Law Publishing Company (New York Law), the publisher of the National Law Journal, James A. Finkelstein, the president of New York Law, David A. Ranii, a reporter for the National Law Journal, and SFN Companies, Inc., which acquired New York Law subsequent to the publication of the article which the plaintiff claims was libelous. The defendants, arguing *inter alia* that the language of the article was not libelous as a matter of law, moved to dismiss the complaint. The circuit court granted the motion, and the appellate court, with one justice dissenting, affirmed (134 Ill. App. 3d 855). We granted the plaintiff's petition

for leave to appeal under our Rule 315(a) (94 Ill. 2d R. 315(a)).

The complaint alleged that Carr made defamatory statements about Owen to reporter Ranii, whose article containing the alleged statements was published in the November 1, 1982, issue of the National Law Journal. The article, with the caption "Judge Suing Lawyer Who Complained About Him," described a libel action filed by Carr against Owen on behalf of Judge William B. Starnes of the circuit court of St. Clair County. In that action the judge sought damages from Owen for "false and defamatory letters and memoranda" to the Illinois Judicial Inquiry Board accusing Judge Starnes of misconduct. Ranii, stating that the judge had been cleared of charges of misconduct by the Judicial Inquiry Board, compared the action brought against Owen with an earlier defamation suit filed by Carr in which he won a judgment against the Alton Telegraph and two of its reporters. Carr's theory in that suit, the article stated, was that the reporters furnished the United States Department of Justice unverified information incriminating the plaintiff contractor solely for the purpose of enabling the reporters to cover the resulting investigation. The inference to be drawn from the article, Owen says, is that he too had an improper purpose in corresponding with the Judicial Inquiry Board. Specifically, Owen focuses on statements in the article attributed to Carr:

> "Judicial inquiries are privileged, but the defendants wrongfully abused that privilege and should be held liable, Mr. Carr claimed. Mr. Owen did not file his complaint in the interest of justice, but instead was trying deliberately to intimidate Judge Starnes and other judges in future cases involving [Owen's client] International Harvester, he said."

The complete article appears as an appendix to this opinion.

(The action brought by Carr in behalf of Judge Starnes was pending in the circuit court of Sangamon County at the time the article was published. The court denied Owen's motion to dismiss the complaint, but the appellate court, upon Owen's appeal under Rule 308(a), reversed, holding that communications with the Judicial Inquiry Board are absolutely privileged against claims of defamation. The appellate court held, though, that the circuit court correctly refused to dismiss a count which alleged that Owen made defamatory statements to persons unrelated to the Board. The cause has been remanded for trial on that count. *Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652.)

Owen claims that Carr's statements were libelous *per se* because they impugned his professional integrity and prejudiced him in the practice of law. The plaintiff does not claim any special damages, and consequently his right to recovery is based on the contention that the statements are actionable as a matter of law. See *Fried v. Jacobson* (1983), 99 Ill. 2d 24, 26; *Strauss v. Meyer* (1868), 48 Ill. 385, 388.

Language to be considered defamatory *per se* must be so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348.) Under common law, language which falsely imputes a lack of integrity in the discharge of duties of office or employment, which prejudices the party in his profession, which imputes the commission of a criminal offense, or which imputes infection with a communicable disease of any kind which, if true, would tend to cause the person to be excluded from society is actionable for defamation without proof of special damages. (*Fried v. Jacobson* (1983), 99 Ill. 2d 24, 27, citing *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 340.) (The legislature has also provided that false

accusations of fornication, adultery and false swearing are actionable as a matter of law. (Ill. Rev. Stat. 1983, ch. 126, pars. 1, 2.)) However, before statements will be judged defamatory as a matter of law, they must have been considered in light of what has come to be known as the innocent-construction rule. *Fried v. Jacobson* (1983), 99 Ill. 2d 24, 27; *Crinkley v. Dow Jones & Co.* (1983), 119 Ill. App. 3d 147, 150.

The innocent-construction rule has its origin in Illinois from *obiter dictum* in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148. (*Valentine v. North American Co.* (1974), 60 Ill. 2d 168, 172 (Ward, J., Underwood, C.J., and Schaefer, J., dissenting).) In *John* it was said:

> "We further believe the language in defendant's articles is not libelous of plaintiff when the innocent construction rule is consulted. That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442.

The rule has been the subject of strong criticism. This court observed in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 349:

> "It [the rule] has been the subject of much critical commentary (see, *e.g.*, Polelle, *The Guilt of the 'Innocent Construction Rule'* in *Illinois Defamation Law*, 1 N.I.U. L. Rev. 181 (1981)); (Symposium, Libel and Slander in Illinois, 43 Chi. Kent L. Rev. 1 (1966)); *cf.* Comment, *The Illinois Doctrine of Innocent Construction: A Minority of One*, 30 U. Chi. L. Rev. 524 (1963)); Stonecipher & Trager, *The Impact of Gertz on the Law of Libel In Illinois*, S.I.U. L.J. 73 (1979)), and considered to be a resurrection of the long-discarded 16th- and 17th-century English rule of *mitior sensus* (Eldredge, *The Law of Defamation* sec. 24, at 161 (1978))."

This court stated in *Chapski* that in the application of the rule there had been inconsistent and contradictory holdings, including a tendency of courts to "strain to find unnatural but possibly innocent meanings of words where such a construction is clearly unreasonable and a defamatory meaning is far more probable." (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 350-51.) The court concluded that a modification of what had been stated in *John* was warranted:

> "We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff." 92 Ill. 2d 344, 352.

We judge that Carr's statements, considered as part of the whole article, may reasonably be said to permit an innocent interpretation. The article, in its own words, attempted to draw "some striking parallels" between the successful suit filed by Carr against the newspaper and two reporters and the action brought by Carr charging Owen with defaming Judge Starnes. The article may be said to suggest that the defendants in the respective proceedings had ulterior motives in instigating the investigations. The article, however, does not state that Owen, by corresponding with the Judicial Inquiry Board, actually intended to intimidate the judge. Rather the article presents Carr's statement only as an allegation to be proved at the trial of the complaint he filed against Owen. Significantly, the statement is preceded by Carr's concession that he did not know the precise information

Owen presented to the Judicial Inquiry Board, and that it would be necessary to acquire evidence supporting the complaint before his client could prevail. The article concludes with the statement that the suit pends in the circuit court; the subsequent holding of the appellate court leaves a single count in the complaint with its subject matter, of course, unproved.

We do not consider that the statements in the article are so "obviously and naturally harmful" to Owen as to constitute libel *per se*. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348.) The plaintiff places undue emphasis on "intimidate" to substantiate the claim that the article assails his professional reputation. By doing so he frustrates the requirement of *Chapski* that words be considered in context. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352; *Crinkley v. Dow Jones & Co.* (1983), 119 Ill. App. 3d 147, 152; *Cartwright v. Garrison* (1983), 113 Ill. App. 3d 536, 541-42.) We agree with the appellate court's conclusion that, considered in its entirety, "[t]he article and words within it can reasonably be construed as an attorney's biased presentation of his client's view of a pending cause of action." 134 Ill. App. 3d 855, 861.

We observe, too, that the Supreme Court has recognized a constitutional privilege for expressions of opinion. (*Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997.) Whether a statement is to be judged to be one of fact or one of opinion is a matter of law (*Lewis v. Time Inc.* (9th Cir. 1983), 710 F.2d 549), and the involved language must be considered in context to determine whether the statement should be construed to be an expression of opinion (*Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin* (1974), 418 U.S. 264, 41 L. Ed. 2d 745, 94 S. Ct. 2770; *Ollman v. Evans* (D.C. Cir. 1984), 750 F.2d 970). As stated, the statements may reasonably be

viewed as an expression of Carr's opinion regarding his client's allegations against Owen. Carr's acknowledgment that he did not know the specific information Owen gave the Judicial Inquiry Board shows that his statement was not a factual charge and actionable as a matter of law.

Owen also contends that Carr's statements are defamatory *per se* because they constitute an accusation of conduct in violation of Rule 8—102 of the Code of Professional Responsibility. The rule provides that "[a] lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer." (87 Ill. 2d R. 8—102.) The plaintiff does not contend that words which accuse an attorney of violating Rule 8—102 should be recognized as a defamatory classification in addition to those classifications of *per se* defamation under common law and under our statute. He apparently urges that an accusation of conduct in violation of the Code should be considered within the classifications of defamation by language which impugns professional integrity or which prejudices the person in professional practice.

The seriousness of false accusations knowingly made against a judge was illustrated in *People ex rel. Chicago Bar Association v. Metzen* (1919), 291 Ill. 55, where a lawyer was disbarred for writing an accusing and intimidating letter to a judge in an attempt to influence the judge in the discharge of his duties. The court stated:

> "Judges are not exempt from just criticism, and whenever there is proper ground for serious complaint against a judge it is the right and duty of a lawyer to submit his grievances to the proper authorities, but the public interest and the administration of the law demand that the courts should have the confidence and the respect of the people. Unjust criticism, insulting language and offensive conduct toward the judges, personally, by attorneys, who are officers of the court, which tend to bring the courts and the law into disrepute and to destroy public confi-

dence *in their integrity, cannot be permitted."* (291 Ill. 55, 58.)

See also *In re Phelps* (1973), 55 Ill. 2d 319, 322-23.

An accusation that an attorney has violated Rule 8—102 serves to impute a lack of professional integrity and may damage an attorney's practice. As we have said above, however, Carr's statements, when examined within the context of the article, are reasonably susceptible to an innocent construction, and also enjoy the constitutional protection allowed expressions of opinion.

Finally, Owen claims that Carr's statements violated Rule 7—107(f), which prohibits a lawyer "associated with a civil action" from making extrajudicial statements regarding the evidence, character or credibility of an interested person, or offering an opinion as to the merits of the claims or positions of an interested person. (87 Ill. 2d R. 7—107(f).) He warns that our deciding here that Carr's statements are reasonably susceptible to an innocent construction would constitute an approval of similar extrajudicial statements by attorneys. Plainly the issue here is whether Carr's statements were libelous *per se*; it is not whether there was an impropriety other than libel.

For the reasons given, the judgment of the appellate court, affirming the circuit court, is affirmed.

*Judgment affirmed.*

APPENDIX

Monday, November 1, 1982     THE NATIONAL LAW JOURNAL

# JUDGE SUING LAWYER WHO COMPLAINED ABOUT HIM

By David Ranii

National Law Journal Staff Reporter

EAST ST. LOUIS, Ill., attorney Rex Carr is pursuing a $16.5 million libel case against the International Harvester Co. and its retained counsel that has some striking parallels to his suit against the Alton Telegraph newspaper company—which produced one of the largest libel verdicts in history.

Mr. Carr's latest libel case, filed in Madison County Circuit Court, *Starnes v. International Harvester Co.*, 82L462, also raises the question of whether a lawyer whose confidential complaint sparks an investigation by a state judicial conduct commission can be liable for damages if no evidence of misconduct is found.

The plaintiff, St. Clair County Circuit Judge William B. Starnes, claims that an attorney representing the Chicago-based International Harvester Co., Robert Owen of Decatur, Ill., sent "false and defamatory letters and memoranda" accusing the judge of misconduct to the Illinois Judicial Inquiry Board.

The letters themselves were confidential, but they sparked an investigation into the judge's conduct by the board. Although the

board eventually gave the judge "a clean bill of health," his reputation was damaged by publicity surrounding the investigation, Mr. Carr said.

Mr. Carr's earlier libel case, *Green v. Alton Telegraph Co.*, 77—66, concerned a confidential memorandum that two Telegraph reporters wrote and gave to the U.S. Justice Department. The memo linked a contractor with organized crime, but a subsequent government investigation failed to substantiate the allegation. (NLJ, 7-14-80.)

However, the contractor was allegedly denied a bank loan he needed to keep his business viable due to the allegation, and a Madison County Circuit Court jury awarded him $9.4 million. While the case was on appeal, the newspaper settled the suit for $1.4 million. (NLJ, May 24.)

To prove his case against International Harvester, Mr. Carr conceded, he must first learn precisely what information Mr. Owen gave to the Judicial Inquiry Board.

The general practice of judicial conduct commissions, including the Illinois board, is to keep all complaints confidential.

Mr. Carr said his client, who could not be reached for comment, first learned of the allegation of misconduct when the board notified him of an investigation in May 1981. The investigation centered on the accusation that Judge Starnes eavesdropped on a jury's deliberation—a criminal offense—in a personal-injury case against International Harvester in which he presided and Mr. Owen represented the company.

(The 1980 case, which involved an explosion of a tractor gas tank, produced a jury verdict of $15 million, which Judge Starnes cut in half. An appellate court later reduced the verdict even further to $1.3 million.)

Judicial inquiries are privileged, but the defendants wrongfully abused that privilege and should be held liable, Mr. Carr claimed. Mr. Owen did not file his complaint in the interest of jus-

tice, but instead was trying deliberately to intimidate Judge Starnes and other judges in future cases involving International Harvester, he said.

Similarly, Mr. Carr alleged in the Alton Telegraph case that the reporters supplied the Justice Department with information for the "purpose of getting a story and not for any other reason," he said.

In addition to libel, the suit charges the defendants with slander relating to rumors about the investigation of the judge that circulated in the courthouse.

Mr. Owen said of the suit, "I can't believe that anyone can be sued by a responsible lawyer [for libel and slander] without him knowing what I am supposed to have said." He added: "A libel complaint in Illinois has to be specific."

Mr. Owen, of the firm of Owen, Roberts, Susler & Murphy, P.C., denied the accusation that he filed a complaint in order to intimidate Judge Starnes and other judges. "Every word of that is a falsehood. There is not a word of truth to it," he said.

International Harvester refused to comment on the suit.

A federal grand jury also investigated Judge Starnes' conduct, but brought no charges against him. Mr. Carr originally filed a libel suit on the judge's behalf that complained that Mr. Owen supplied both the Justice Department and the inquiry board with libelous information. However, the judge withdrew that suit after it was removed to federal court.

Last week, a battle over where the current suit—which makes no mention of the Justice Department—should be litigated was resolved in the judge's favor. The suit, which was removed to federal court shortly after the case was filed June 18, was remanded to state court for lack of a federal question.