ROSALYN SNITOWSKY, Plaintiff-Appellant, v. NBC SUBSIDIARY (WMAQ-TV), INC., d/b/a NBC Five, Defendant-Appellee (Marjorie Adams, Defendant).

First District (2nd Division)   No. 1—97—3638

Opinion filed June 9, 1998.—Rehearing denied July 8, 1998.

Paul K. Vickrey and Robert P. Greenspoon, both of Niro, Scavone, Haller & Niro, of Chicago, for appellant.

Samuel Fifer, of Sonnenschein, Nath & Rosenthal, of Chicago, and Alisa D. Shudofsky, of National Broadcasting Company, of New York, New York, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

WMAQ-TV broadcast a report that Marjorie Adams, the principal of Nettelhorst School, had charged Rosalyn Snitowsky, a special educa-

tion teacher, with serious misconduct. Snitowsky sued Adams and WMAQ for defamation and invasion of privacy. The trial court dismissed the counts against WMAQ for failure to state a cause of action and because several privileges protected the reports. Snitowsky appeals.

On December 19, 1996, WMAQ-TV's 10 p.m. news broadcast included this report:

> "Ron Magers: The alleged victim was only eight years old—allegedly beaten by fellow students at the direction of the teacher. ***
>
> Robin George: Ron, the incident happened in a special education class here at Nettelhorst School. The teacher was apparently trying to discipline an eight-year-old student when, some believe, she went too far. According to a police report, the teacher brought the child to the front of the room and held him down. She then told other kids in the classroom to come up one at a time and beat the child. A school security guard spotted what was happening as a fourth student was beating the victim and broke it all up. It was the school principal who filed the report with the Chicago Police Department. Now, the eight-year-old student we are told was not seriously injured. *** This is apparently not the first problem that they've had with the teacher. Just a month ago there was a meeting here with other concerned parents about this teacher."

The next morning, on its 6:30 a.m. newscast, WMAQ's anchor reported:

> "A case of school discipline is under investigation by the Chicago Police Department. A teacher at the Nettelhorst School on North Broadway is accused of holding an eight-year-old special education student and then telling other kids to come up one at a time and hit that child in the face. A school security guard spotted what was happening and broke it up. It was the school principal who filed the report with the Chicago Police Department."

The 5 p.m. broadcast the same day included news of the "investigation of a report that a teacher allowed pupils to beat a special education child." Tracy Haynes elaborated:

> "[N]o charges have been filed, and police say it's not likely that any will be. But the Board of Education is investigating, and parents are asking questions of their own.
>
> * * *
>
> The actual allegations are that the special education teacher Rosalyn Snitowsky held eight-year-old student Miguel Frias and instructed four other students to hit the boy. Snitowsky would not go on camera today, saying she can't do so until her teachers' union allows her to. But she did tell us quote, 'That there was a couple of kids that punched him,' and, 'I held his hands.' She says that's

what happened when he became disruptive. But Snitowsky does say that she restrained the boy while trying to break up a fight, and there are those who feel good about Snitowsky's work.

\*\*\*

But today the Chicago Board of Education relieved Snitowsky of her classroom duty.

Blondean Davis [from the Chicago Board of Education]: We have reassigned her to the central office pending the results of the investigation. If the allegations are correct, then we intend to seek to terminate her from the service of the system.

Haynes: Rosalyn Snitowsky has worked for Chicago public schools since 1978 and has no record of complaints against her. Chicago police say they've found no evidence of criminal wrongdoing in their investigation."

Finally, at 10 p.m. that day, WMAQ anchor Carol Marin reported:

"Parents react tonight to reports of alleged abuse at a Northside elementary school, and the Board of Education is beginning its investigation. Students at Nettelhorst Elementary were reportedly allowed to hit an eight-year-old special education student while the teacher allegedly held him down. Parents are shocked.

Michelle Williams: That really upsets me, and I would really think about taking my daughter out.

Marin: The teacher, Rosalyn Snitowsky, tells NBC-5 that she did restrain a boy while trying to break up a fight. Snitowsky said quote, 'There was a couple of kids that punched him.' 'I held his hands...' (when he became disruptive). The Board has reassigned Snitowsky pending the investigation."

According to Snitowsky's complaint, on December 19, 1996, Frias, an eight-year-old student in Snitowsky's class, tried to push a desk into the table where Snitowsky sat, then he punched another student. Snitowsky called Adams' office and asked for a security officer. Snitowsky heard no page of the security officer, and the officer did not come to the classroom.

Frias kicked Snitowsky and tried to bite her. Other students began to attack Frias. Snitowsky attempted to restrain Frias and protect him from the others. Snitowsky filed a discipline form regarding the incident. Adams interviewed each student separately.

Adams asked to see Snitowsky after dismissing the students for the day. Adams told Snitowsky the students said Snitowsky held Frias down and told the other students to punch him. Snitowsky denied the charge and began to recount the incident. Adams refused to listen and told Snitowsky they would discuss it the next day. Adams later called the police. The officer who took the call wrote the following narrative of the accusation:

"[Adams] relates that the offender/special education teacher physically held down the victim/student, and then encouraged other students to strike the victim. [Adams] interviewed all of the students in the class who stated the same story as victim. All students in the class are special ed students. Victim sustained a cut on his lip. Victim transported home by mother before police arrived. [Adams] has a list of all the students involved in incident."

Snitowsky further alleged in her complaint that Adams spoke with the media about the charges. No employee of WMAQ ever attempted to contact Snitowsky or any security guard; Snitowsky called WMAQ to protest the false reports.

On December 20, 1996, police officers interviewed all of the students in Snitowsky's class, Snitowsky, Adams, and a security guard. Adams did not see the incident. The guard said he did not see anyone restrain, punch or kick Frias, as he did not come to the classroom at the time of the alleged incident. All of the students told police that Frias kicked Snitowsky, who restrained him, and at least one student then hit Frias, giving him a bloody lip. All of the students, including Frias, said Snitowsky told that student to stop, and she never hit Frias or encouraged any students to hit him. The officers wrote in the official report, dated December 20, 1996, that they found "no elements of a crime" committed by Snitowsky, so they classified the allegations against her as "UNFOUNDED."

Snitowsky alleged that in June 1996 she was a member of the Nettelhorst School Local School Council. The council issued a negative evaluation of Adams, particularly criticizing her understanding of special education and her failure to meet legal special education requirements. The council formally asked Adams to resign. Adams did not resign. Instead she threatened to begin the process to terminate Snitowsky's employment. Snitowsky no longer held a position on the council by December 1996.

In count I Snitowsky sought compensation for defamation *per se* by WMAQ, and in count VII she charged WMAQ with invasion of privacy. WMAQ moved to dismiss the counts against it pursuant to sections 2—615 and 2—619 of the Civil Practice Law. 735 ILCS 5/2—615, 2—619, 2—619.1 (West 1996).

The court held that the broadcasts "speak in terms of allegations and ongoing investigations and are, therefore, susceptible of innocent construction." Also the court found that "as a past elected member" of the council Snitowsky was a public figure, and she had failed to allege actual malice sufficiently. As grounds for dismissing count VII, and as a third basis for dismissing the first count, the court held that the fair report privilege applied. The court dismissed the counts

against WMAQ with prejudice, further finding no just reason to delay enforcement or appeal.

■ On appeal Snitowsky argues that all three bases for the court's order must fail. If a statement supports an innocent construction it cannot render its publisher liable for defamation *per se*, even if the publisher fabricated the statement without any basis. Insofar as a defendant relies on the accuracy of its report that someone else made certain allegations, the innocent construction rule is irrelevant. Under the innocent construction rule:

"a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*." *Chapski v. Copley Press*, 92 Ill. 2d 344, 352, 442 N.E.2d 195 (1982).

■ In the news broadcasts WMAQ told its audience that the principal of Nettelhorst charged Snitowsky with directing her students to beat Frias. The conduct charged amounts to criminal offenses of aggravated battery and child abuse, and the conduct charged is incompatible with Snitowsky's profession as a special education teacher. The allegations are not so vague as to admit of any interpretation compatible with Snitowsky's innocence. Compare *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 47, 684 N.E.2d 935 (1997). Therefore the substance of the charge could be defamation *per se*, actionable without proof of special damages. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87-88, 672 N.E.2d 1207 (1996).

The trial court found an innocent construction because WMAQ said only that the principal alleged Snitowsky so acted. "[T]he repetition of an imputation made by a third person is actionable although the defamer attributes the charge to [a] third person." Restatement (Second) of Torts § 571, Comment *c*, at 187 (1977); see *Lorillard v. Field Enterprises, Inc.*, 65 Ill. App. 2d 65, 73, 213 N.E.2d 1 (1965).

In *Owens v. CBS, Inc.*, 173 Ill. App. 3d 977, 996, 527 N.E.2d 1296 (1988), CBS broadcast a report that a third party alleged that the plaintiff wrote a letter threatening to kill the President. CBS argued that the innocent construction rule protected it because it presented the charges as allegations. The court held:

"[T]he gravamen of plaintiff's cause of action against CBS is that it should be held liable because it republished a defamatory statement ***. ***[W]e fail to see how the statements *** repeated by defendant CBS on its 6 and 10 p.m. news broadcasts could reasonably be innocently interpreted." *CBS*, 173 Ill. App. 3d at 990-91.

See also *Bryson*, 174 Ill. 2d at 97 (labeling account as "fiction" not sufficient to give article innocent construction as fabrication).

*Owen v. Carr*, 113 Ill. 2d 273, 497 N.E.2d 1145 (1986), presents an important qualification to the rule which renders a republisher liable for the original defamation despite referring to the charges of misconduct as allegations. In that case Owen, an attorney, had sued a judge, who was Carr's client. Carr then sued Owen. A newspaper reported that Carr charged Owen with abuse of process by suing the judge for the purpose of intimidation. *Carr*, 113 Ill. 2d at 276. The newspaper article suggested that both parties "had ulterior motives" for the lawsuits they filed. *Carr*, 113 Ill. 2d at 279. The court held that the "article and words within it can reasonably be construed as an attorney's biased presentation of his client's view of a pending cause of action." *Carr*, 113 Ill. 2d at 280.

Thus the article in *Carr* gave readers enough background to doubt the charges against Owen on the basis of the ulterior motives of the person making the charges. Absent such explanation giving the audience reason to doubt the charges, the general rule of the Restatement and *CBS* should prevail. The republisher remains liable for damages caused by the republication of defamatory material, even with correct attribution to the party charging the misconduct, if the republisher acted negligently and no other privileges protect the publication.

■ Here, WMAQ reported that a school principal charged one of the teachers who worked at her school with criminal misconduct. As the school could conceivably incur liability for the teacher's misconduct, the allegation may have seemed to the audience to be an especially trustworthy admission against interest. WMAQ provided none of the background needed for the audience to recognize any reason to doubt the principal's accusations. In particular, WMAQ made no reference to prior disagreements between the principal and the teacher, or the teacher's membership on a school council which requested the principal's resignation.

WMAQ points out that it reported, "Chicago police say they've found no evidence of criminal wrongdoing in their investigation." In the same broadcast WMAQ reported as admitted fact that Snitowsky held Frias' hands while other students hit him. In this context, the broadcast leads the audience to conclude either that the criminal law permits this conduct and only the school board might find it objectionable, or the police conducted a woefully inadequate investigation. The report, in context, does not present grounds for doubting Adams' motives for the initial allegations, as it omitted any account of the prior disagreements between Adams and Snitowsky.

Due to the omissions, the allegations reported fall under the general rule of *CBS* and not the special exception of *Carr*. The allegations reported charge criminal misconduct inconsistent with Snitowsky's

professional competence, and without further context the audience has no basis to arrive at the innocent construction that the person charging has ulterior motives for making possibly untrue charges. See *Berkos v. National Broadcasting Co.*, 161 Ill. App. 3d 476, 486-88, 515 N.E.2d 668 (1987). That is, if WMAQ had wholly fabricated the reports without any statement from Adams or any other factual basis, the reports imply that Snitowsky engaged in criminal misconduct with sufficient clarity to leave WMAQ potentially liable without proof of special damages. The innocent construction rule does not exempt WMAQ from liability for the defamation *per se* alleged here.

■ Next, the court found Snitowsky to be a public figure who must plead and prove actual malice to recover for defamation. We agree with WMAQ that the first amendment to the United States Constitution, rather than state law, controls the determination of whether a plaintiff is a public figure for purposes of defamation. See *Rosenblatt v. Baer*, 383 U.S. 75, 84, 15 L. Ed. 2d 597, 604, 86 S. Ct. 669, 675 (1966). WMAQ cites *Gray v. Udevitz*, 656 F.2d 588, 590-91 (10th Cir. 1981), in which the court held that, for the plaintiff to count as a public figure for a defamation suit:

> "Two prerequisites must be met ***. The plaintiff must be a public official for the purposes of the article and the defamatory statements must relate to his official conduct."

■ WMAQ's report made no reference to Snitowsky's membership on the school council, and the allegedly defamatory statements do not refer in any way to her conduct in office. Accordingly, Snitowsky's former status as an elected official does not make her a public figure for this lawsuit.

WMAQ argues that Snitowsky made herself a public figure for this suit because she alleged in her complaint that Adams made the defamatory charges in retaliation for acts Snitowsky took when she was a member of the council. As the court held in *Street v. National Broadcasting Co.*, 645 F.2d 1227, 1235 (6th Cir. 1981):

> "[O]nce a person becomes a public figure in connection with a particular controversy, that person remains a public figure thereafter for purposes of later commentary or treatment of that controversy."

Snitowsky's acts on the council made her a public figure in connection with the council's criticisms of Adams and the request for her resignation. WMAQ in its story made no comment on or reference to that controversy. Instead, it reported an allegation without making any reference to the possible motivation arising from the earlier controversy. Since WMAQ did not comment on the controversy for which Snitowsky made herself a public figure, her status as a former elected official does not make her a public figure for this suit.

■ One Illinois court held that schoolteachers generally count as public figures for defamation suits. *Basarich v. Rodeghero*, 24 Ill. App. 3d 889, 321 N.E.2d 739 (1974). Later decisions have renounced that holding. *McCutcheon v. Moran*, 99 Ill. App. 3d 421, 423-24, 425 N.E.2d 1130 (1981); *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 229, 617 N.E.2d 191 (1993). We agree with the reasoning of the court in *Franklin v. Lodge No. 1108, Benevolent & Protective Order of Elks*, 97 Cal. App. 3d 915, 924, 159 Cal. Rptr. 131, 136 (1979), which held that the protection for comments on public officials derives from

> "the concept of a freedom of the governed to question the governor, of those who are influenced by the operation of government to criticize those who control the conduct of government. The governance or control which a public classroom teacher might be said to exercise over the conduct of government is at most remote and philosophical: Far too much so, in our view, to justify exposing each public classroom teacher to a qualifiedly privileged assault upon his or her reputation. \*\*\* We are unwilling to hold that a school teacher must be deemed to have assumed the risk of nonmalicious defamation. We perceive in such a rule a real and intolerable danger to the freedom of intellect and of expression which the teacher must have to teach effectively." (Emphasis omitted.)

Snitowsky's work as a teacher does not make her a public figure for this defamation suit. To recover she must prove that WMAQ acted negligently, but she need not prove actual malice. *Kumaran*, 247 Ill. App. 3d at 230.

■ The trial court also dismissed the complaint based on the fair report privilege, finding that WMAQ presented a fair account of the public proceedings reflected in the written report police made of Adams' phone call. For this privilege, Illinois courts have adopted section 611 of the Restatement (Second) of Torts (see *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 376-78, 671 N.E.2d 1154 (1996); *O'Donnell v. Field Enterprises, Inc.*, 145 Ill. App. 3d 1032, 1035, 491 N.E.2d 1212, 1215 (1986)), which provides:

> "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported." Restatement (Second) of Torts § 611 (1977).

■ The privilege applies to a news report of an "official action or proceeding" or of a public meeting; WMAQ does not argue that a public meeting took place here. We note that in general charges made to the police are not rendered official acts by the officer's act of recording the charge. See Restatement (Second) of Torts § 611, Comment *h* (1977); *Pittsburgh Courier Pub. Co. v. Lubore*, 200 F.2d 355 (D.C. Cir.

1952). If the fair report privilege applies at all, it applies only because Adams is a public official and her statement to the police an official act. But we need not decide whether the report qualifies as an official act, because the record before us does not establish sufficient facts to show that WMAQ broadcast a fair report. "[W]hen a news media account is neither complete nor a fair abridgment of the proceedings, then the privilege is lost." *O'Donnell*, 145 Ill. App. 3d at 1036.

In *Tunney v. American Broadcasting Co.*, 109 Ill. App. 3d 769, 441 N.E.2d 86 (1982), several homeowners complained to their village about homes they bought from the plaintiff. The village inspector checked the complaints and filed a public report finding water leaks and one broken driveway. The inspector, in a discussion with the reporter, called the work done on the houses "shoddy." *Tunney*, 109 Ill. App. 3d at 773. The defendant broadcast a report detailing the inspector's report and the plaintiff's rejoinder that acts of God, rather than faulty construction, caused the problems. The report continued:

> "But sinking driveways, leaking roofs and similar complaints are obviously the result of poor construction." (Emphasis omitted.) *Tunney*, 109 Ill. App. 3d at 771.

The inspector in his report and discussion with the reporter never said faulty construction caused the cracks or leaks, and he did not point to the leaks or cracks to show that the work was shoddy.

The court held that the defendant abandoned the fair report privilege by going beyond the official's statements to find evidence supporting the charge of shoddy work. The court reversed summary judgment for the defendant.

Here, too, as the record now stands, the fair report privilege may not protect WMAQ, because WMAQ did not abridge the statements made to police; instead it reported evidence not found in the report. WMAQ reported that a security guard witnessed the beating, although the police report on which WMAQ claims it relied makes no mention of such an eyewitness. Neither does the police report include any statement supportive of the broadcast news that Snitowsky told her pupils to come up one at a time and hit Frias in the face. By announcing facts beyond the official report to make the charges more credible, WMAQ abandoned the fair report privilege.

WMAQ argues that the fair report privilege protects it, because the "gist or sting" of the broadcast matched the police report. See *Dolatowski v. Life Printing & Publishing Co.*, 197 Ill. App. 3d 23, 27, 554 N.E.2d 692 (1990). The extension of the privilege to publications with the same gist as official reports applies only to fair abridgements of those reports. *Dolatowski*, 197 Ill. App. 3d at 27; *O'Donnell*, 145 Ill. App. 3d at 1037-38. The privilege does not permit the expansion of the

official report by the addition of fabricated evidence designed to improve the credibility of the defamation. Since WMAQ has not presented any source for many statements in its broadcast, especially for the eyewitness security guard or the demand that students come up one at a time to strike Frias in the face, the broadcasts cannot qualify as a fair abridgement of Adams' report to the police.

WMAQ also claims in its brief that it fairly reported statements Adams made to WMAQ reporters. No evidence in the record supports this assertion. Adams has filed a sworn response to the complaint in which she categorically denies that she had any discussions with reporters about the charges. WMAQ says it relied on statements of Blondean Davis, but she too denied that she made statements supporting the details added to the broadcast report.

■ At oral argument in this court, WMAQ raised for the first time an argument for a fair report privilege based on Snitowsky's original, unverified complaint. In that complaint Snitowsky alleged, as grounds for a cause of action against Davis, that Davis told WMAQ reporters the falsities WMAQ broadcast. Davis swore she never made those false statements. Snitowsky did not repeat the allegation in her amended complaint.

Amended pleadings ordinarily supersede prior pleadings. *Yarc v. American Hospital Supply Corp.*, 17 Ill. App. 3d 667, 670, 307 N.E.2d 749 (1974). The admissions of a party in an unverified original pleading may be used at trial as evidence of the matter admitted, but they are not binding judicial admissions. *Yarc*, 17 Ill. App. 3d at 670. Here the statements in the unverified original pleading meet Davis' sworn denial to create an issue of fact as to whether Davis, in her official capacity, made statements that WMAQ accurately summarized in its broadcast report. WMAQ can at best create an issue of fact concerning the fair report privilege. The trial court erred by granting judgment on this basis. For the fair report privilege to protect WMAQ, WMAQ will need to persuade the trier of fact that its broadcast reports fairly abridged official acts or proceedings.

■ Finally, Snitowsky argues that this court should reverse the dismissal of the count of her complaint charging WMAQ with invasion of privacy. To establish this cause of action, Snitowsky must prove that the news reports placed her before the public (1) in a false light, (2) which would be highly offensive to a reasonable person, and (3) WMAQ had "knowledge that the statements were false or [acted] with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 17-18, 607 N.E.2d 201 (1992).

■ The broadcast presented Snitowsky as a teacher who encour-

aged her students to beat another student. The complaint adequately alleges the placement in an offensively false light. WMAQ contends that Snitowsky has not alleged facts that could prove it recklessly disregarded the falsity of its broadcast. She alleged that WMAQ reporters made no attempt to contact her or the security guard. After she contacted WMAQ, the station deliberately distorted her statements to make them appear to support the false charges raised against her, although the police investigation showed that all witnesses, including the supposed victim, agreed that Snitowsky had not committed the alleged misconduct.

The sole source for the report WMAQ has presented is a statement Adams made to the police. That statement mentions no security guard although WMAQ reported that a security guard witnessed the beating. The report says nothing about instructing the children to come to the front of the room one at a time to hit Frias in the face. Courts have found actual malice when the only source for a story does not contain statements supposedly derived from it. *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987).

In *Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976), the defendant claimed it derived its allegedly defamatory publication from a prior article about the plaintiff. The author admitted that he did not derive all of the publication from the prior article, as some statements he took from information he found "[s]omewhere in the research file." *Carson*, 529 F.2d at 212. The court held:

> "Nothing in the present record, which consists of the pleadings, depositions and affidavits, lends any support whatsoever, or even relates to, the published [defamatory] statements ***. At this stage of the proceedings, it can only be concluded that those statements are a sheer fabrication by the defendants ***.

> \* \* \*

> We believe that the district court could only find on the basis of pretrial affidavits, depositions and other documentary evidence that the plaintiffs will be able to prove actual malice and that they should therefore be given the opportunity to do so. The defendants in fabricating and imagining 'facts' necessarily entertained serious doubts as to the truth of the statements and had a high degree of awareness of their probable falsity." *Carson*, 529 F.2d at 212-13.

On the state of the pleadings here, too, with no source shown for many statements in the broadcast, we must assume WMAQ fabricated this evidence of misconduct. Accordingly, we find that Snitowsky has adequately pled facts that could support a finding that WMAQ acted with actual malice, recklessly disregarding the falsity of its report.

The innocent construction rule does not protect WMAQ's report of

defamatory allegations because WMAQ reported no reason to disbelieve the source of the allegations. WMAQ also did not connect the report to Snitowsky's former status as a public official, so the special protection for reports concerning public figures does not apply. The fair report privilege also does not apply because the report broadcast presented evidence not included in the report. The facts alleged could support a finding that WMAQ invaded Snitowsky's privacy by placing her in a false light, especially in light of their response to her call and the result of the police investigation. To establish her claims, Snitowsky will need to prove only that WMAQ and its reporters acted negligently when they broadcast the defamatory statements WMAQ either originated or republished on December 19 and 20, 1996. Accordingly, we reverse the judgment entered in favor of WMAQ on the counts charging defamation *per se* and invasion of privacy.

Reversed and remanded.

RAKOWSKI and COUSINS, JJ., concur.