MARIANNE DUNLAP, Plaintiff-Appellee and Cross-Appellant, v. ALCUIN MONTESSORI SCHOOL, Defendant-Appellant and Cross-Appellee (Penny Fahey *et al.*, Defendants and Cross-Appellees).

First District (2nd Division)    No. 1—97—0017

Opinion filed July 21, 1998.

Russell J. Fee, of Chicago, for appellee.

Francis J. Leyhane III, of Condon & Cook, of Chicago, for appellants.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Marianne Dunlap, brought a suit against defendant, Alcuin Montessori School (School), for breach of an employment contract, defamation and promissory estoppel. Plaintiff also brought an action for defamation against the individual members of the School's board of trustees (Board), alleging that a letter from the Board to the students' parents defamed plaintiff. The trial court entered summary judgment in favor of the Board on the defamation claims. Plaintiff voluntarily dismissed her promissory estoppel claim against the School. At the close of evidence in the jury trial, the trial court granted the School's motion for directed verdict on the defamation claim. The jury found in favor of plaintiff on the breach of contract count, awarding her $150,000. The trial court entered judgment on the verdict and denied the School's posttrial motion to set aside or reduce the damages award. The School appeals, contending that the jury abused its discretion in awarding $150,000 in damages. Plaintiff cross-appeals the summary judgment in favor of the Board and directed verdict in favor of the School rendered on the defamation counts. This court has jurisdiction pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the following reasons, we affirm as modified.

## FACTUAL BACKGROUND

Before trial, the trial court granted partial summary judgment in favor of the Board on the defamation claims and plaintiff voluntarily dismissed her promissory estoppel claim against the School. At trial, the evidence showed the following. Plaintiff was the School's educational director, pursuant to a written contract. The contract provided in pertinent part:

"1) TERM: The employment of EMPLOYEE shall commence on July 1, 1990, for a term of twelve months through June 30, 1991, and shall continue thereafter from year to year unless this Agreement is terminated by either party in accordance with paragraph 7 hereof.

\* \* \*

7) TERMINATION: This agreement may be terminated by either party for cause at any time and by either party without cause upon 90 days' notice."

The Board was comprised of parents of children who were enrolled at the School. The Board formed a committee to review the School's organizational structure, which presented its findings on September 27, 1993. The committee recommended the creation of a new position of president, to whom the educational director would report. On October 14, 1993, the Board notified plaintiff of an October 26, 1993, meeting at which she could share her "questions, comments, reservations, [and] suggestions regarding the proposed organizational changes." Plaintiff objected to the proposed changes at the meeting because they would require her to report to a non-Montessori-trained administrator. The committee then decided not to proceed with the proposed restructuring plan. After the October 26 meeting, a faculty member asked plaintiff for a copy of the proposed organizational changes so that she could comment on them at an upcoming faculty retreat. Plaintiff then placed copies of the proposed changes in all the faculty members' mail boxes. On October 28, 1993, Penny Fahey, a Board member, learned that plaintiff had distributed the copies and accused her of insubordination. When the Board met on November 1, 1993, Fahey raised the issue of plaintiff's future employment with the School. At that meeting, the members discussed their personal conflicts with plaintiff. During a November 8, 1993, continuation of the November 1 meeting, the Board authorized Michael Comiskey to draft a letter to plaintiff informing her of her termination.

On November 12, 1993, Board member Michael Comiskey met with plaintiff and gave her the option of resigning or being terminated. Plaintiff testified at trial that she refused to resign because she loved her work and did it very well. Plaintiff believed that resigning would have been dishonest because it would have incorrectly implied that she did not want to work at the School. According to plaintiff, Comiskey terminated her employment at the meeting. Comiskey gave her a list of causes upon which the Board relied. The list stated that plaintiff: (1) was unwilling to support the Board's policies; (2) failed to perform her job responsibilities; (3) failed to support a new school program; (4) undermined the School's restructuring of administrative staff job re-

sponsibilities; (5) had problems in communicating with the students' parents; and (6) was insubordinate because she distributed a restructuring plan draft against the Board's instructions. Plaintiff had not seen the list before but had talked with one Board member several weeks earlier about one of the issues on the list. She did not believe that any of the failures on the list were true.

On November 22, 1993, plaintiff received a letter from the Board which stated in pertinent part:

"I am writing to notify you that the Alcuin Board of Trustees has decided to terminate your employment as Educational Director, for cause, effective November 29, 1993.

Even though we have no obligation to do so, the Board has decided that Alcuin will pay you through February 28, 1994, as if you were still employed as Educational Director through that date."

On November 22, 1993, the Board also sent a letter to the students' parents. In pertinent part, the letter stated that:

"We appreciate the contributions that Marianne has made to Alcuin over the years. The curriculum, the excellent faculty and the national recognition of our program are due in large part to her efforts. However, a combination and accumulation of events over time has caused virtually a total breakdown of trust and confidence between [plaintiff] and the Board. This has led the Board to conclude that [plaintiff] is not satisfactorily performing her duties or carrying out the policies of the Board."

The School's faculty sent a letter to the parents on November 22, 1993, which stated that "[w]e were shocked to find out that on Friday, November 12, the Board of Trustees gave [plaintiff] the choice of resigning or being terminated as Educational Director at Alcuin. The faculty is unanimously and vehemently opposed to this decision."

Plaintiff presented evidence that her annual salary was $38,213 in 1993. In addition, she received an annuity of $2,500 to use for benefits.

At the close of evidence, the trial court granted the School's motion for directed verdict on the defamation claim. In its ruling on the motion, the trial court found that regarding the November 22, 1993, letter from the Board to the parents:

"[T]here was [no] intentional action on the part of the board to defame [plaintiff], that there was [no] reckless or conscious disregard for her reputation or her property, that being her reputation. That based on the fact—not based on the manner in which the letter was written and only as to Count Number III, I'm going to grant [the School's] motion for directed verdict."

The trial court instructed the jury that plaintiff alleged that the School terminated her employment without cause and that the School presented affirmative defenses that plaintiff failed to adequately

perform her job. The trial court also issued the following jury instructions which stated in pertinent part:

> "If you decide for the Plaintiff on her claim for breach of contract, you must fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damage proved by the evidence to have resulted from the defendant's breach:
>
>> 1. the income lost by the Plaintiff as a result of her discharge;
>>
>> 2. the annuity benefit lost by the Plaintiff as a result of her discharge;
>>
>> 3. the value of any benefits lost by the Plaintiff as a result of her discharge.
>
> Whether any of these elements of damage has been proved by the evidence is for you to determine."

The jury then found in favor of plaintiff on the breach of contract claim and awarded her $150,000. The trial court denied the School's motion for postjudgment relief, and the present appeal and cross-appeal followed.

## ISSUES PRESENTED FOR REVIEW

On appeal, the School argues that the jury erred in awarding plaintiff $150,000 for breach of contract because: (1) the contract's notice period limited plaintiff's damages to 90 days' salary and benefits despite the School's original statement that plaintiff was terminated for cause; (2) the School informed plaintiff that she was terminated more than 90 days before the contract expired and therefore the contract was not renewed beyond June 1994; and (3) even if plaintiff were entitled to damages beyond June 1994, the jury's award was excessive and constituted a windfall recovery for plaintiff.

On cross-appeal, plaintiff contends that summary judgment in the Board's favor on the defamation counts was erroneous because: (1) a genuine issue of material fact existed as to whether the Board's members acted in their individual capacities in publishing the allegedly defamatory letter; and (2) if the Board's members acted in their official capacities in publishing the letter, a genuine issue of material fact exists as to whether their conduct was willful and wanton. Plaintiff also argues on cross-appeal that the directed verdict in the School's favor on the defamation claim was erroneous because plaintiff presented sufficient evidence that the Board's members acted with willful and wanton conduct to defame her.

## OPINION

■ ■ The School first argues that the jury's award was erroneous because the notice period in the contract limited plaintiff's damages to

90 days' salary and benefits, despite its original statement that plaintiff was terminated for cause. It is within a jury's discretion to determine damages for breach of contract, and its award of damages is entitled to substantial deference. *Snover v. McGraw*, 172 Ill. 2d 438, 447, 667 N.E.2d 1310, 1314 (1996). We will not disturb a jury's award of damages " 'unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered.' " *Snover*, 172 Ill. 2d at 447, 667 N.E.2d at 1314, quoting *Gill v. Foster*, 157 Ill. 2d 304, 315, 626 N.E.2d 190, 195 (1993). An employee is entitled to the value of salary and fringe benefits when an employer breaches the employee's contract. *Schwarze v. Solo Cup Co.*, 112 Ill. App. 3d 632, 445 N.E.2d 872 (1983).

In support of its argument, the School relies on *Kemnetz v. Elliott Farmers Grain Co.*, 136 Ill. App. 3d 226, 482 N.E.2d 1076 (1985), and *Paradise v. Augustana Hospital & Health Care Center*, 222 Ill. App. 3d 672, 584 N.E.2d 326 (1991). In *Kemnetz*, the plaintiff's employment contract stated that it would continue until the end of the current calendar year and from year to year unless cancelled for cause or unless cancelled by either party with 30 days' written notice to the other party. The defendant terminated the plaintiff with 10 days' written notice. The appellate court noted that the defendant's breach of the contract arose from the shortness of the notice and limited the plaintiff's damages to the salary and benefits he would have received if the defendant had given the proper 30 days' written notice. Similarly, in *Paradise*, the plaintiff sued the defendant for breach of a consulting contract. The contract allowed either party to terminate it, with or without cause, upon 30 days' prior written notice. The trial court determined that although the defendant's letter purported to terminate the contract with one day's notice, the plaintiff's effective date of termination was 30 days after the letter. The trial court awarded the plaintiff breach of contract damages consisting of unpaid salary and bonuses through the 30-day notice period.

In response, plaintiff contends that she was entitled to damages through the date of trial because the contract was never terminated in accordance with paragraph 7 and therefore was never terminated at all. In support of her contention, plaintiff relies on several cases that we will not address because they lack precedential value.[1] Furthermore, plaintiff relies on *Munoz v. Expedited Freight Systems, Inc.*, 775 F.

---

[1]*Miller v. Dupli-Color Products Co.*, No. 87 C 6247 (N.D. Ill. September 22, 1989) (memorandum opinion and order not published in official federal reporter); *McCann v. Frank B. Hall & Co.*, 609 F. Supp. 627 (N.D. Ill. 1985)

Supp. 1181 (N.D. Ill. 1991), to argue that she is entitled to damages through the date of her trial. In *Munoz*, the plaintiff was an at-will employee whose employer terminated him without following specific disciplinary procedures in an employee handbook, which constituted the employment contract. The court concluded that the employer's actions constituted a breach of contract, and the plaintiff was awarded damages through the date of trial. Plaintiff also cites *Munoz* to argue that Illinois courts evaluate employment termination suits under only one of two categories: whether the termination itself was proper or whether proper notice of termination was given. According to *Munoz*, "[I]n cases where the question was whether proper notice of termination had been given (rather than whether the termination itself was proper) the courts have awarded damages only for the additional time under the proper notice period." *Munoz*, 775 F. Supp. at 1188.

None of the cases cited by either party here are directly on point. In the present case, the contract stated that either party could terminate it for cause at any time and that either party could terminate it without cause upon 90 days' notice. The contract, unlike the ones in *Kemnetz* and *Paradise*, did not require written notice. The facts in *Munoz* are also different because in that case, there was no contract requiring any type of notice upon a termination without cause. The plaintiff in *Munoz* was an at-will employee whose employee handbook constituted the contract.

■ Regarding the present case, *Kemnetz* and *Paradise* are more instructive than *Munoz*. Here, according to the contract's provisions, if the School terminated plaintiff without cause, it was required to give her 90 days' notice. The School's termination letter made the termination effective within seven days. In both *Kemnetz* and *Paradise*, the plaintiffs did not receive the proper amount of notice under their contracts, but their damages were limited to the contract's notice period. In this case, the jury found that the School breached plaintiff's employment contract and awarded her $150,000. Although the jury is entitled to substantial deference in its award of damages, after reviewing the record we find that the award bears no reasonable relationship to plaintiff's loss. Even though the School articulated its

(vacated at 624 F. Supp. 98 (N.D. Ill. 1985)); *Criterion Advertising Co. v. Clemensen's Florists & Decorators, Inc.*, 314 Ill. App. 383 (1942) (abstract opinion); *McCormick Harvesting Machine Co. v. Cordsiemon*, 101 Ill. App. 140 (1901); *Bour v. Kimball*, 46 Ill. App. 327 (1892) (appellate decisions before 1935 not binding authority (*Chicago Title & Trust Co. v. Vance*, 175 Ill. App. 3d 600 (1988)).

causes for terminating plaintiff, the jury rejected those reasons and found that plaintiff was terminated without cause. Nevertheless, plaintiff did know that she was being terminated and received a letter stating that her termination was effective seven days from the date of the letter. Furthermore, plaintiff received 90 days' salary and time to seek other employment. Plaintiff's damages, in a reasonable relationship to her loss, were limited to her salary and benefits for those 90 days. She has already received her salary for those days, but she is still entitled to payment for 90 days' benefits. Given the lack of persuasive authority from plaintiff, we decline to accept her argument that employment termination cases must be evaluated according to one of two rigid categories or that plaintiff's contract automatically renewed from year to year because of the jury's finding that the School breached the employment contract. Because we have determined under the particular facts of this case that plaintiff's damages were limited to salary and benefits for 90 days, we need not address the School's remaining issues.

■ We next address plaintiff's cross-appeal arguments that the trial court erred in granting the Board's motion for summary judgment and the School's motion for directed verdict. At the outset, we note plaintiff's contention that the trial court determined that the letter was *per se* defamatory by denying the Board's motion to dismiss. According to plaintiff, "[t]he defamation issue was fully briefed and decided as a matter of law early in the case, at the motion-to-dismiss stage." We reject this argument. A motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)) attacks the legal sufficiency of a complaint, and does not raise affirmative factual defenses. *Bryson v. New America Publications, Inc.*, 174 Ill. 2d 77, 672 N.E.2d 1207 (1996). In contrast, "at the summary judgment stage of the proceedings, the parties move beyond an examination of the sufficiency of the pleadings" and "[t]hat which may be sufficient to plead a cause of action does not necessarily survive a summary judgment motion." *Drinane v. State Farm Mutual Automobile Insurance Co.*, 222 Ill. App. 3d 805, 809-10, 584 N.E.2d 410, 412-13 (1991). Also, a motion for directed verdict is made at the close of evidence at trial, before the case is submitted to the jury. 735 ILCS 5/2—1202 (West 1994). The trial court, in denying the Board's section 2—615 motion to dismiss, did not determine as a matter of law that the Board's letter to the parents was *per se* defamatory. The dismissal of the motion to dismiss did not preclude any evaluation of whether the letter was defamatory at the summary judgment or directed verdict stage. See *Holland v. Arthur Andersen & Co.*, 212 Ill. App. 3d 645, 650, 571 N.E.2d 777, 780 (1991).

■ Plaintiff first contends on cross-appeal that the trial court erred in granting summary judgment in favor of the Board on the defamation claim. An appellate court reviews the trial court's ruling on a motion for summary judgment *de novo. Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 530, 675 N.E.2d 897, 905 (1996). "Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cramer*, 174 Ill. 2d at 530, 675 N.E.2d at 905, citing 735 ILCS 5/2—1005(c) (West 1994). "The scope of appellate review of a summary judgment motion is limited to the record as it existed at the time the trial court ruled." *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 947, 627 N.E.2d 202, 206 (1993). A reviewing court, in determining whether summary judgment was properly entered, is not restricted to the exact reasons that the trial court stated or implied in entering its order. *McCullough*, 254 Ill. App. 3d at 950, 627 N.E.2d at 208. Furthermore, a reviewing court may affirm a correct decision for any reason in the record regardless of the trial court's basis for the decision. *Joseph v. Collis*, 272 Ill. App. 3d 200, 649 N.E.2d 964 (1995).

■ A statement is defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him or her. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992). Defamatory *per se* statements consist of those statements in which the defamatory character is apparent on its face and the words used are so obviously and materially harmful that injury to the plaintiff's reputation may be presumed. *Owen v. Carr*, 113 Ill. 2d 273, 277, 497 N.E.2d 1145, 1146 (1986). If a defamatory statement is actionable *per se*, the plaintiff need not plead or prove actual damage to his or her reputation in order to recover. *Owen*, 113 Ill. 2d at 277, 497 N.E.2d at 1146.

■ In Illinois, five categories of defamatory statements give rise to a defamation *per se* cause of action: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a communicable disease which, if true, would tend to exclude one from society; (3) those imputing inability to perform or want of integrity in the discharge of duties of office or employment; (4) those prejudicing a particular party in his or her profession or trade; and (5) those stating false accusations of fornication or adultery. *Bryson*, 174 Ill. 2d at 88-89, 672 N.E.2d at 1214-15. "Even if the challenged statement fits within one of the recognized categories that will sustain a *per se* action, recovery will not be allowed if the statement can reasonably be

given an innocent construction." *Anderson v. Vanden Dorpel,* 172 Ill. 2d 399, 412, 667 N.E.2d 1296, 1301 (1996). Determining whether a statement may reasonably be innocently construed is a question of law. *Anderson,* 172 Ill. 2d at 413, 667 N.E.2d at 1301. A reviewing court "will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense." *Bryson,* 174 Ill. 2d at 93, 672 N.E.2d at 1217. In determining whether a statement is defamatory, the court must focus on the predictable effect the statement had on those who received the publication or heard the broadcast. See *Quinn v. Jewel Food Stores, Inc.,* 276 Ill. App. 3d 861, 868, 659 N.E.2d 1225, 1231 (1995).

■ According to plaintiff, there was a genuine issue of material fact as to whether the Board members acted in their individual capacities in publishing the letter. Implicit in plaintiff's argument is that the letter was *per se* defamatory because it imputed an inability to perform or want of integrity in the discharge of duties of office or employment. As we have discussed, the determination of whether the letter was *per se* defamatory was not made at the motion to dismiss stage. After reviewing the trial court's ruling on the motion for summary judgment *de novo*, we find that even if the letter was *per se* defamatory, it was reasonably capable of an innocent construction. Plaintiff contends that the letter's following statements were *per se* defamatory: "A combination and accumulation of events over time has caused virtually a total breakdown of trust and confidence between [plaintiff] and the Board. This has led the Board to conclude that [plaintiff] is not satisfactorily performing her duties or carrying out the policies of the Board." We note that the comments plaintiff challenges followed compliments on the contributions and efforts she gave to the School. Even assuming that the challenged statements were *per se* defamatory, taken in their context they may be reasonably construed as an assessment of plaintiff's failure to perform well in the School's particular job setting, as opposed to her inability to perform well in other, future positions. See *Anderson,* 172 Ill. 2d at 404, 412-14 (former employer's statement to prospective employer that the plaintiff " 'did not follow up on assignments' " and " 'could not get along with her coworkers' " was subject to a reasonably innocent construction). The challenged statements in this case were less extreme than those in *Anderson,* which were found to be subject to a reasonably innocent construction. Because we have determined that the allegedly *per se* defamatory statements were subject to a reasonably innocent construction, we do not need to address the issues of whether the Board was protected by absolute or qualified privilege under case law or under the General Not for Profit Corporation Act of 1986 (805 ILCS 105/108.70 (West 1994)).

■ Plaintiff also argues that the trial court erred in granting the School's motion for a directed verdict on the defamation count. A directed verdict is proper only when the evidence so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967). A reviewing court reviews the trial court's decision on a motion for directed verdict *de novo* because the trial court does not weigh the evidence or judge the credibility of the witnesses. *Maple v. Gustafson*, 151 Ill. 2d 445, 603 N.E.2d 508 (1992). The evidence must be reviewed in the light most favorable to the nonmoving party and all inferences will be drawn in favor of the nonmoving party. *Pedrick*, 37 Ill. 2d at 494, 229 N.E.2d at 504.

In this case, the trial court granted the School's motion for a directed verdict on the defamation claim. It found that there was no intentional action by the Board to defame plaintiff and no reckless or conscious disregard for her reputation or property. As we have stated, we may affirm a correct decision on any basis in the record. Reviewing the trial court's directed verdict ruling *de novo*, we find, as we have discussed earlier, that the allegedly *per se* defamatory statements were subject to a reasonably innocent construction and that the *Pedrick* standards have been met.

In sum, we find that the jury's $150,000 damages award was not reasonably related to plaintiff's loss and that her damages were limited to salary and benefits for the 90-day period specified in the employment contract. Plaintiff has received 90 days' salary but is still entitled to the amount for 90 days' worth of the $2,500 annuity, or $625. In addition, we find upon *de novo* review that the trial court did not err in granting the Board's motion for summary judgment and the School's motion for directed verdict on the defamation counts because the challenged statement, even if *per se* defamatory, was subject to a reasonably innocent construction.

In light of the foregoing, we modify the damages award and we award plaintiff $625 for 90 days' worth of her annuity. In addition, we affirm the circuit court's rulings on the motions for summary judgment and directed verdict.

Affirmed as modified.

RAKOWSKI and COUSINS, JJ., concur.